DECISION AND JUDGMENT ENTRY
{¶ 1} Matthew Powell appeals his tampering with evidence conviction, arguing that the trial court should have conducted a hearing on his claim of selective prosecution and dismissed the case. Powell did not present evidence to raise a reasonable doubt about the prosecutor's motive in prosecuting him; nor did he present evidence showing that similarly situated officers avoided prosecution. The evidence he submitted shows at most police oversight. Because Powell failed to establish a colorable entitlement to his selective prosecution claim, the trial court did not err by refusing to hold a hearing or by denying his motion to dismiss. Powell also asserts that the court should have allowed him to present evidence regarding his selective prosecution claim at trial. Because the defense of selective prosecution is a matter that is independent of guilt or innocence, it is for the court, not a jury, to decide. Thus, the trial court did not err by prohibiting him from introducing evidence at trial relating to it. Powell's first assignment of error is meritless.
 {¶ 2} Next, Powell contends that his conviction is against the manifest weight of the evidence. He claims that the evidence does not show that he prepared the false felony crime report because the reports are unsigned. However, the state presented circumstantial evidence that Powell prepared the false report. Only he, Officer Tom Lancaster, and the police dispatcher were on duty at the time. Both Lancaster and the dispatcher testified that they did not prepare the report. The dispatcher observed Powell compiling the report and heard him state that he would falsely write in the report that he discovered the evidence at the scene of the traffic stop. Because a jury could reasonably conclude that Powell prepared the false report, his conviction is not against the manifest weight of the evidence. Therefore, we affirm the trial court's judgment.
 I. FACTS {¶ 3} On January 25, 2003, Powell, a Village of New Boston police officer, stopped a vehicle based on information from a confidential informant that the occupants possessed drugs. A fellow officer, Tom Lancaster, assisted with the stop, and Portsmouth police officer Marty Eveland conducted a canine search of the vehicle. After the canine alerted on the vehicle, the officers removed the occupants and searched the vehicle and its occupants: Melissa Pace, the driver and vehicle owner; Keith Henson, the back seat passenger; and Donald Murphy, the front seat passenger.
 {¶ 4} Powell discovered cocaine on Pace and Eveland found cocaine under the rear passenger seat. Powell searched Murphy but found nothing on him. He also found a wallet on the front passenger floor. He checked it, but did not find anything illicit. Powell then advised Murphy to leave the scene. The officers arrested Pace and Henson and called a towing company to impound the vehicle.
 {¶ 5} While Officer Lancaster waited for the tow truck, he completed a vehicle impound sheet. On it, he noted that the vehicle contained a "wallet (empty)." Officer Lancaster did not look inside the wallet but instead relied upon Powell's statement that the wallet did not contain anything.
 {¶ 6} Later that night the tow truck driver, John Stewart was performing his own inventory of the vehicle and found crack cocaine in the wallet. Stewart brought the wallet to the police station and claimed that he gave it to Powell.
 {¶ 7} Subsequently, someone within the New Boston police department prepared a felony crime report[1] regarding the traffic stop. Powell disputes that he prepared the report. The report states that the "person reporting information" is "Matt Powell." The report reads:
"On 1-25-03 at 11:58 pm Sgt. Powell and Ptl. Lancaster made a routine traffic stop at the 3900 blk of Rhodes Ave. During the stop Sgt. Powell asked for K-9 Officer Marty Eveland to responed [sic] to the stop. The K-9 Officer Marty Eveland responded to the stop and the K-9 hit on the vehicle. A female and male were arrested at the scene for trafficking and possession of Crack Cocaine. The passenger in the front seat was found [to be] Donald Murphy. Sgt. Powell and Ptl. Lancaster searched Mr. Murphy's person but could not find anything illegal. Sgt. Powell then advised Mr. Murphy that he was free to go. Sgt. Powell then while double checking the vehicle for inventory found a wallet in between the passenger seat and console of the vehicle. Inside the wallet was Donald Murphy's B.W.C. card with his name on it and 2 baggies with Crack Cocaine (2 grams)."
A supplement to the report reads:
"Sgt. Powell and Ptl. Lancaster then went back to do an inventory of the vehicle before it was impounded. Sgt. Powell then came across a black wallet in between the passenger seat and the console of the vehicle. Sgt. Powell then felt something hard in the wallet. Sgt. Powell looked inside and found 2 grams of Crack Cocaine inside the wallet. Melissa Pace advised Sgt. Powell and Ptl. Lancaster that the wallet did belong to Mr. Murphy * * *."
 {¶ 8} On October 29, 2004, the Scioto County Grand Jury returned an indictment charging Powell with two counts[2]
of tampering with evidence, in violation of R.C. 2921.12(A)(2).
 {¶ 9} Powell subsequently filed a motion to dismiss the indictment based upon selective prosecution. He claimed that the state charged and prosecuted him in retaliation for exercising his right to free speech and for investigating alleged drug activity in Scioto County. Powell asserted that after he filed a lawsuit against Sheriff Marty Donini, Chief Charles Horner, the City of Portsmouth and Portsmouth Police Department, Scioto County and the Scioto County Sheriff's Office, the Scioto County Prosecutor "repeatedly attempted to bring charges against" him.
 {¶ 10} Powell claimed that the state did not file any charges arising out of the Murphy incident against Officer Lancaster. He further argued that other police officers falsified the facts of other arrests and were not prosecuted. Powell asserted that in a prior case, Deputy Goodwin testified that he omitted evidence of injury from his report in a domestic violence case, and in a different case, Officer Brewer testified that he left part of an incriminating statement out of a report.
 {¶ 11} The court determined that Powell failed to establish a prima facie selective prosecution claim so as to warrant an evidentiary hearing. The court found that Powell failed to identify any other individuals who the state did not prosecute for knowingly preparing false records for the purpose of misleading an investigation, or that the prosecutor had an improper motive. The court stated that while Powell "accuses various governmental officials of improper or illegal conduct, and he suspects that his accusations may have caused them to retaliate," he fails to "explain why the Scioto County Prosecutor has any reason to abandon his professional responsibilities by retaliating against someone who complained about other governmental officials." The court also prohibited Powell from introducing evidence at trial relating to his selective prosecution claim.
 {¶ 12} At trial, the state presented evidence that Stewart gave Powell the wallet with the cocaine inside and that Powell prepared the felony crime report. Officer Lancaster testified that the tow truck driver handed Powell the wallet and told Powell that he may want to look inside of it again. When he looked inside, Powell found crack cocaine. Lancaster testified that Powell then "just kind of looked around and said, let's just try to keep this between us." Lancaster stated that only, he, the dispatcher, the tow truck driver, and Powell were present in the room.
 {¶ 13} Lancaster testified that Powell signed an impound form that contained a date of January 25, 2003, and time of 11:58 p.m., and that under the section entitled "chain of custody," the form states, "Donald Murphy (wallet)," which Powell received. Lancaster stated that he "had no involvement in" preparing the impound form.
 {¶ 14} Lancaster testified that he did not prepare the felony crime report, which stated that he and Powell inventoried the vehicle before it was impounded and that Powell found the black wallet in between the passenger seat and the console. Lancaster stated that Powell did not look inside the wallet and discover crack cocaine at the scene of the traffic stop.
 {¶ 15} Jessica Voiers, the New Boston Police Department Dispatcher who was on duty, testified that she saw Stewart bring the wallet to the police station and hand it to Powell. She heard Powell state to just keep it between them and that he would write in his report that he found the wallet at the traffic stop. She typed part of the felony crime report involving Murphy based upon what Powell told her and she recalls seeing Powell putting the felony reports together that evening.
 {¶ 16} Former Scioto County Assistant Prosecutor Randolph Rumble stated that when he read the felony report he concluded: "Powell advised Mr. Murphy that he was free to go and Sergeant Powell, while double checking the vehicle for inventory found a wallet in between the passenger seat and console of the vehicle and inside the wallet was Donald Murphy's BWC card with his name on it and two baggies of crack cocaine." He had no indication that Stewart found the wallet and cocaine after towing the vehicle from the scene of the traffic stop.
 {¶ 17} In his defense, Powell presented the testimony of Teresa Blankenship, his girlfriend, and Deputy Sheriff Jason Frazier, one of his friends. Both testified that they observed Lancaster give Powell the wallet.
 {¶ 18} After the jury found Powell guilty, he filed this appeal containing the following assignments of error:
First Assignment of Error:
"The trial court erred in refusing to dismiss the charges against defendant on the basis of selective prosecution and refusing to permit defendant to present his defense."
Second Assignment of Error:
"Defendant's conviction is manifestly against the weight of the evidence and must be overturned."
 II. SELECTIVE PROSECUTION {¶ 19} In his first assignment of error, Powell asserts that the trial court erred by denying his motion to dismiss the indictment based upon selective prosecution and by refusing to permit him to present a selective prosecution defense at trial. Powell claims that the trial court should have held a hearing regarding his selective prosecution defense. Powell further asserts that he was entitled to present a "sloppy police work" defense in light of Arthur Anderson v. United States (2005),544 U.S. 696.
 {¶ 20} We conduct a de novo review of a trial court's decision regarding a motion to dismiss based upon a selective prosecution defense. See State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128,767 N.E.2d 166; State v. Spencer (Nov. 4, 1998), Scioto App. No. 97CA2536 (both appearing to apply a de novo standard of review without expressly stating so). Thus, we independently determine whether the evidence establishes a prima facie claim of selective prosecution.
 {¶ 21} In LaMar, the Ohio Supreme Court explained the framework for analyzing a selective prosecution defense:
"The decision whether to prosecute a criminal offense is generally left to the discretion of the prosecutor. UnitedStates v. Armstrong [1996], 517 U.S. [456,] 464, 116 S.Ct. 1480,134 L.Ed.2d 687. That discretion is, however, subject to constitutional equal-protection principles, which prohibit prosecutors from selectively prosecuting individuals based on `an unjustifiable standard such as race, religion, or other arbitrary classification.' Id., quoting Oyler v. Boles (1962),368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446. Although a selective-prosecution claim is not a defense on the merits to the criminal charge itself, a defendant may raise it as an `independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.' State v. Getsy
(1998), 84 Ohio St.3d 180, 203, 702 N.E.2d 866.
To support a claim of selective prosecution, `a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.' Statev. Flynt (1980), 63 Ohio St.2d 132, 134, 407 N.E.2d 15, quotingUnited States v. Berrios (C.A.2, 1974), 501 F.2d 1207, 1211."
Id. at ¶¶ 43-44.
 {¶ 22} The defendant's burden of establishing discriminatory prosecution is a heavy one. See State v. Hutchinson, Athens App. No. 03CA31, 2004-Ohio-4125, citing State v. Freeman
(1985), 20 Ohio St.3d 55, 58, 485 N.E.2d 1043. The mere failure to prosecute other violators of a statute does not establish the defense of selective prosecution. Freeman, 20 Ohio St.3d at 58. Selectivity in enforcement does not constitute a constitutional violation unless the discrimination is "`intentional or purposeful.'" Flynt, 63 Ohio St.2d at 134, quoting Snowden v.Hughes (1944), 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497. Moreover, the mere existence of a potential discriminatory purpose does not, by itself, show that such purpose motivated a particular defendant's prosecution. Freeman,20 Ohio St.3d at 58. "Absent some demonstration of an invidious motive, [a] court will not presume intentional or purposeful discrimination from a mere showing of different treatment." LaMar, at ¶ 46.
 {¶ 23} A defendant is not entitled to an evidentiary hearing on a selective prosecution defense unless he sets forth a prima facie claim. See, e.g., Pepper Pike v. Dantzig, Cuyahoga App. No. 83425, 2004-Ohio-2562, at ¶ 14. As stated in United Statesv. Hazel (C.A.6, 1983), 696 F.2d 473, 475:
"[I]t is only when [a] prima facie showing has been made and the defendant has proven a `colorable entitlement' to a dismissal for selective prosecution, that an evidentiary hearing should be held. United States v. Brown, 591 F.2d 307, 310-11 (5th Cir. 1979). A mere allegation that the exercise of First Amendment rights led to the prosecution does not mandate a full evidentiary hearing. Rather, `[a] hearing is necessary only when the motion alleges sufficient facts to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose.' United States v. Larson, 612 F.2d 1301, 1304-05 (8th Cir. 1980)."
Thus, "[i]n order to warrant an oral hearing, the defendant must show sufficient facts to take the question past the frivolous state and raise a reasonable doubt as to the prosecutor's motive and purpose; the defendant must demonstrate a `colorable entitlement' to a selective prosecution claim."Spencer, supra; see, also, State v. Keene (Sept. 20, 1996), Montgomery App. No. 14375; State v. Wasmus (April 27, 1995), Franklin App. Nos. 94APA07-1013 and 94APA07-1014; State v.Perotti (May 15, 1991), Scioto App. No. 89CA1845.
 {¶ 24} Here, the trial court did not err by refusing to hold an evidentiary hearing regarding Powell's selective prosecution defense or by denying his motion to dismiss. Powell did not demonstrate a colorable entitlement to a selective prosecution claim. The evidence does not raise a reasonable doubt as to the prosecutor's motive and purpose. In fact, to avoid any appearance of invidious motive, a special prosecutor was appointed. The Scioto County Prosecuting Attorney's office was not involved in Powell's prosecution.
 {¶ 25} Furthermore, Powell failed to show that the state failed to prosecute similarly situated officers. While Powell refers to officer testimony in two prior cases, that testimony demonstrates at most police oversight. In the one case, the officer omitted information regarding injury in a domestic violence case. In the other case, the officer omitted information regarding a statement. Neither officer admitted to affirmatively falsifying the facts in order to justify prosecuting the defendant. Thus, Powell was not entitled to a hearing on the motion to dismiss.
 {¶ 26} Similarly, Powell's argument that the trial court erred by refusing to permit him to present a selective prosecution defense at trial is meritless. He was not entitled to present this defense to the jury because it is a matter that is independent of his guilt or innocence. United States v. Abboud
(C.A.6, 2006), 438 F.3d 554, 579-80 (affirming district court's grant of government's motion in limine to prevent defendants from presenting evidence of selective prosecution at trial). "`By both tradition and constitutional mandate the jury is given the responsibility of determining guilt or innocence according to instructions of law delivered by the court. The question of discriminatory prosecution relates not to the guilt or innocence of appellants, but rather addresses itself to a constitutional defect in the institution of the prosecution.'" Id., quotingUnited States v. Berrigan, 482 F.2d 171, 175 (C.A.3, 1973). Thus, it presents a matter for the court, not the jury.
 {¶ 27} Powell's assertion that Arthur Anderson means that he was entitled to present a "sloppy police work" defense is unavailing. Powell does not raise the trial court's purported failure to compel the chief of police to appear "duces tecum" as an assignment of error. Accordingly, we do not address it. See App.R. 16(A) 12(A).
 {¶ 28} Accordingly, we overrule Powell's first assignment of error.
 III. MANIFEST WEIGHT OF THE EVIDENCE {¶ 29} In his second assignment of error, Powell contends that his conviction is against the manifest weight of the evidence because the felony reports are unsigned.
 {¶ 30} When considering whether a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction."State v. Getsy (1998), 84 Ohio St.3d 180, 193, 702 N.E.2d 866. We sit, essentially, as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony."State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, quoting Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 72 L.Ed.2d 652. We must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, but keeping in mind that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982),70 Ohio St.2d 79, 80, 434 N.E.2d 1356; State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. We may reverse the conviction only if it appears that the fact finder, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."'Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Conversely, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 31} Here, the state charged Powell with violating R.C.2921.12(A)(2), which reads:
(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
* * *
(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation.
 {¶ 32} Sufficient circumstantial evidence exists that Powell committed the offense. The state presented evidence showing that Powell prepared the felony crime report that asserts he found the cocaine inside Murphy's wallet. Neither Voiers nor Lancaster typed the part of the felony crime report that falsely stated Powell checked the wallet after Murphy was ordered to leave and found the cocaine in it. Powell was the only other person on duty that night. Thus, the jury could infer that Powell must have prepared the false felony crime report. Additionally, Voiers testified that Powell stated he would put in the report that he found the cocaine in the wallet at the scene of the traffic stop and that she saw Powell compiling the felony crime reports.
 {¶ 33} Both Voiers and Lancaster testified that Powell indicated that he wanted to keep the circumstances of the wallet's recovery between them. The state claims that two reasons for this exist: (1) to avoid embarrassment for his mistake in overlooking the drugs; and (2) to conceal from his supervisors, the prosecutor, the grand jury, that the cocaine actually was found after the vehicle was towed and was discovered by a civilian. The jury could have concluded that Powell wished to keep it confidential so that he could conceal the true facts.
 {¶ 34} Powell's argument that his witnesses' testimony showed that he did not commit the offense is meritless. The jury obviously disbelieved their testimony. The state discredited Deputy Frazier's claim that he was on-duty on the night of the traffic stop. Powell's girlfriend had an obvious bias. Additionally, even if both were correct that Stewart did not hand Powell the wallet, Powell's conduct after the police received the wallet from Stewart formed the basis of prosecution, not whether Stewart actually handed him the wallet.
 {¶ 35} Accordingly, we overrule Powell's second assignment of error and affirm the court's judgment.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J.: Concur in Judgment and Opinion.
[1] The police department provides the felony crime reports to the Scioto County Prosecutor's Office to use in deciding whether to prosecute a crime.
[2] The second count involved a different set of circumstances, and because the jury acquitted Powell of this count, it is not relevant to this appeal.