The STATE of Ohio, Appellant,

v.

MICHEL, Appellee.

[Cite as *State v. Michel,* 181 Ohio App.3d 124, 2009-Ohio-450.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 24072.

Decided Feb. 4, 2009.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Thomas J. Kroll, Assistant Prosecuting Attorney, for appellant.

James L. Burdon, for appellee.

CARR, Presiding Judge.

{¶ 1} The state of Ohio appeals the judgment of the Summit County Court of Common Pleas that dismissed the indictment against appellee, Donald R. Michel Jr., on the grounds of selective prosecution. This court reverses.

I

{¶ 2} On March 6, 2007, Michel, doing business as DBS, D & D Vending, D & K Vending, and XYZ Vending, was charged by secret indictment with one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1) and (B)(1), a felony of the first degree; three counts of money laundering in violation of R.C. 1315.55(A)(1), (2), and (3), felonies of the third degree; seven counts of money laundering in violation of R.C. 1315.55(A)(1) and (3), felonies of the third degree; one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree; one count of forgery in violation of R.C. 2913.31(A)(3), a felony of the fifth degree; three counts of gambling in violation of R.C. 2915.02(A)(5), misdemeanors of the first degree; and one count of raffles in violation of R.C. 2915.092(B), a misdemeanor of the first degree. In addition, a specification of criminal forfeiture pursuant to R.C. 2923.32 and 2933.42 was added to all 17 counts. Denny Zbinden was charged in the same secret indictment with one count of engaging in a pattern of corrupt activity, ten counts of money laundering, three counts of gambling, and one count of raffles. Amanda Enterprises, Inc. was charged in the same secret indictment with one count of engaging in a pattern of corrupt activity, ten counts of money laundering, one count of forgery, three counts of gambling, and one count of raffles. The offenses were alleged to have been committed at various times, as early as June 1, 2000, and as recently as November 27, 2004. At his arraignment, Michel entered a plea of not guilty to the charges.

{¶ 3} On September 14, 2007, Michel filed a motion to suppress certain evidence allegedly seized in violation of Michel's constitutional rights and a motion to dismiss on the grounds of selective prosecution. The state opposed the motion to dismiss, and Michel responded. The trial court held a hearing on Michel's motion to dismiss on January 9 and 16, 2008. At the conclusion of the hearing, Michel submitted his written argument to the court. The written argument was not filed and is not part of the record before this court. Also at the conclusion of the hearing, the trial court granted leave to the state to file its written argument. The state filed its argument in opposition to the motion to dismiss on January 18, 2008. On January 25, 2008, the trial court issued a judgment entry in which it dismissed the charges against Michel on the grounds

of selective prosecution. The state timely appealed, raising one assignment of error for review.

## II

### ASSIGNMENT OF ERROR

The trial court erred in granting defendant's motion to dismiss on the basis of selective prosecution.

{¶ 4} The state argues that the trial court erred by granting Michel's motion to dismiss on the basis of selective prosecution. This court agrees.

{¶ 5} Both the state and Michel agree that this court reviews the trial court's decision regarding a motion to dismiss on the basis of selective prosecution de novo. Michel argues, however, that the state "misunderstands the meaning of a de novo review" in this context when it encourages this court's "independent evaluation" to determine whether the defendant has established a prima facie case of selective prosecution. Rather, Michel argues that this court must accept the trial court's factual findings if they are supported by competent, credible evidence.

{¶ 6} A review of the case law regarding selective prosecutions demonstrates that the reviewing courts generally have not expressly deferred to the trial court's factual findings. Rather, the reviewing courts have often merely set out the law applicable to the issue of selective prosecution and applied it to the evidence in the record, without noting the trial court's findings of fact. See, e.g., *Wayte v. United States* (1985), 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547; *United States v. Armstrong* (1996), 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687; *State v. Flynt* (1980), 63 Ohio St.2d 132, 17 O.O.3d 81, 407 N.E.2d 15; *Cleveland v. Trzebuckowski* (1999), 85 Ohio St.3d 524, 709 N.E.2d 1148; *Akron v. Darulis* (Jan. 31, 2001), 9th Dist. No. 20162, 2001 WL 81263. The dissenting justice in *Flynt*, however, wrote that he believed that the majority "wrongfully substituted their own version of the facts for that of the trier of fact." *Flynt*, 63 Ohio St.2d at 136, 17 O.O.3d 81, 407 N.E.2d 15 (Paul W. Brown, J., dissenting) (asserting that "in reviewing a decision rendered by a trial court without a jury, a Court of Appeals will indulge in every reasonable presumption in favor of findings made by the court below as a basis for its decision").

{¶ 7} On a couple of occasions, the Ohio Supreme Court implied that abuse of discretion might be the appropriate standard of review in selective-prosecution cases. In *State v. Freeman* (1985), 20 Ohio St.3d 55, 58, 20 OBR 355, 485 N.E.2d 1043, the high court, after enunciating a criminal defendant's burden of demonstrating a prima facie case of selective prosecution, asserted, "We cannot agree with appellants' contention that the trial court abused its discretion in overruling

their motions for dismissal." Later, in *State v. Getsy* (1998), 84 Ohio St.3d 180, 203–204, 702 N.E.2d 866, the Supreme Court analyzed the issue first by setting out the two-prong test for the prima facie case that the defendant must make to prevail and then by considering the evidence as "[i]t appears from the record." The high court ultimately concluded, without enunciating the standard of appellate review, that "[t]he trial court did not abuse its discretion in denying Getsy's motion." Id. at 204, 702 N.E.2d 866.

{¶ 8} The Fourth District Court of Appeals declared that the standard of review of a trial court's decision on a motion to dismiss premised upon selective prosecution is de novo. *State v. Powell,* 4th Dist. No. 05CA3024, 2006-Ohio-5031, 2006 WL 2780112, at ¶ 20. In support of its declaration, the *Powell* court cited *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, noting parenthetically that the Ohio Supreme Court in that case "appear[ed] to apply a de novo standard of review without expressly stating so." *Powell* at ¶ 20. This court does not agree that *LaMar* supports the Fourth District's conclusion. As part of his challenge to the trial court's denial of his motion to dismiss on selective-prosecution grounds, LaMar asserted error based on the trial court's failure to state its essential factual findings as required by Crim.R. 12(F). *LaMar* at ¶ 47. The Supreme Court held that LaMar had forfeited any error because he had failed to request the factual findings that he claimed were necessary. Id. Accordingly, it appears that there were no factual findings by the trial court in the record, so the reviewing court was compelled to review the evidence as if in the first instance. Because the reviewing court's only option under the circumstances was to conduct a de novo review of the evidence, the *LaMar* decision does not affirmatively stand for the proposition that an appellate court reviews de novo a trial court's decision regarding a motion to dismiss on selective-prosecution grounds. This court rejects the speculative logical leap of the *Powell* court, particularly in light of the absence of any definitive statement of the applicable standard of appellate review and the existence of various other approaches used to analyze these cases.

{¶ 9} In our opinion, much like the review of a motion to suppress, the review of a trial court's determination regarding a motion to dismiss on selective-prosecution grounds presents a mixed question of law and fact. Accordingly, this court takes well Michel's argument that our review in this case is analogous to our review of a suppression motion. In those cases, we have stated:

> Because the trial court assumes the role of trier of fact during a suppression hearing and is in the best position to evaluate "the credibility of witness and resolve questions of fact[,]" [*State v.*] *Swan* [9th Dist. No. 22939, 2006-Ohio-2692, 2006 WL 1487060] at ¶ 8, citing *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, "[a] reviewing court 'must accept the trial court's

findings of fact if they are supported by competent, credible evidence.' " *State v. Cutlip*, 9th Dist. No. 08CA009353, 2008-Ohio-4999, at ¶ 7, quoting *State v. Burnside*, 100 Ohio St.3d 152, 797 N.E.2d 71, 2003-Ohio-5372, at ¶ 8. "However, the application of the law to those facts will be reviewed de novo." *State v. Metcalf*, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶ 6, citing *State v. Searls* (1997), 118 Ohio App.3d 739, 741, 693 N.E.2d 1184.

{¶ 10} The Ohio Supreme Court has enunciated the analytical framework regarding the issue of selective prosecutions as follows:

The decision whether to prosecute a criminal offense is generally left to the discretion of the prosecutor. *United States v. Armstrong*, 517 U.S. at 464, 116 S.Ct. 1480, 134 L.Ed.2d 687. That discretion is, however, subject to constitutional equal-protection principles, which prohibit prosecutors from selectively prosecuting individuals based on " 'an unjustifiable standard such as race, religion, or other arbitrary classification.' " Id., quoting *Oyler v. Boles* (1962), 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446. Although a selective-prosecution claim is not a defense on the merits to the criminal charge itself, a defendant may raise it as an "independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *State v. Getsy* (1998), 84 Ohio St.3d 180, 203, 702 N.E.2d 866; see, also, *Armstrong*, 517 U.S. at 463, 116 S.Ct. 1480, 134 L.Ed.2d 687.

To support a claim of selective prosecution, " 'a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.' " *State v. Flynt* (1980), 63 Ohio St.2d 132, 134, 17 O.O.3d 81, 407 N.E.2d 15, quoting *United States v. Berrios* (C.A.2, 1974), 501 F.2d 1207, 1211.

{¶ 11} The Ohio Supreme Court has also stated that "[t]he conscious exercise of some selectivity in enforcement is not in itself, however, a violation of the United States Constitution." *Flynt*, 63 Ohio St.2d at 134, 407 N.E.2d 15, citing *Oyler*, 368 U.S. at 456, 82 S.Ct. 501, 7 L.Ed.2d 446. The high court recognized:

Selective enforcement may be justified when the meaning or constitutionality of the law is in doubt and a test case is needed to clarify the law or to establish its validity. Selective enforcement may also be justified when a striking example or a few examples are sought in order to deter other violators, as part of a bona fide rational pattern of general enforcement, in the expectation that general compliance will follow and that further prosecutions will be unneces-

sary. It is only when the selective enforcement is designed to discriminate against the persons prosecuted, without any intention to follow it up by general enforcement against others, that a constitutional violation may be found. *Flynt,* 63 Ohio St.2d at 135, fn. 1, 407 N.E.2d 15, quoting *People v. Utica Daw's Drug Co.* (1962), 16 A.D.2d 12, 225 N.Y.S.2d 128, 136.

{¶ 12} In this case, Michel has failed to meet his burden to satisfy the first prong of the *LaMar* test to show that he has been singled out for prosecution while other similarly situated individuals have not been prosecuted because of conduct of the type forming the basis of the charges against him.

{¶ 13} At the hearing on his motion to dismiss, Michel presented the testimony of the following: Lt. James Phister, vice unit commander and commander of Task Force Direct at the Akron Police Department; Tangie Vincent, Michel's granddaughter; Denny Zbinden, Michel's partner and codefendant; and Michel himself. Numerous exhibits were admitted into evidence by both Michel and the state.

{¶ 14} The task force was charged with investigating gambling and organized crime activities. In February 2003, Lt. Phister entered Michel's Jackpots Instant Bingo store and directed him to close the store on the suspicion that the activities conducted therein were illegal. Lt. Phister, who had no warrant or court order, directed Michel not to remove any of the gambling machines in his store. He advised Michel that the removal of the machines would constitute tampering with evidence. When Lt. Phister returned to the store several days later, he found that all the machines had been removed from the store. He was able to speak with Michel at the office of Michel's prior counsel and determine the location of the machines. When the police finally located the machines, they found that all the motherboards, or "brains," of the machines had been removed. The police did not charge Michel with any crime at that time.

{¶ 15} Soon thereafter, R.C. Chapter 2915 was amended to distinguish games of skill from illegal games of chance. Therefore, the police noticed that instant bingo stores disappeared and were replaced by arcades claiming to provide skill-based amusement games. Michel opened various such arcades, and in March 2004, the task force began to investigate his six arcades, two of which he owned or operated with his partner Denny Zbinden. Lt. Phister testified that the task force was looking at all the arcade stores operating within the task force's jurisdiction at the time because he did not believe that the games constituted games of skill authorized under the law.

{¶ 16} On November 23, 2004, the police appeared simultaneously at Michel's six arcades with search warrants. The police seized all the games and other items from Michel's arcades. During the next year, the task force also searched

the arcades of others and seized machines. Lt. Phister swore out complaints in November 2005, alleging misdemeanor gambling charges against George Georgekopolous, Dominick Trammell, and Charles Smallwood. Notwithstanding the testimony of the state's expert, D. Robert Sertell, Georgekopolous and Trammell were ultimately found not guilty by the Akron Municipal Court for conduct involving the arcade game Tic Tac Fruit. The state thereafter dismissed the charges against Smallwood.

{¶ 17} Because the police had not charged Michel, he attempted to secure the return of his property that the police had seized. The police refused to return his property. On November 17, 2006, Michel filed a civil action in the federal district court against Lt. Phister and two other task force members, seeking monetary damages and the return of his seized property. On March 6, 2007, Michel, Zbinden, and Amanda Enterprises, Inc. were charged by secret indictment with various crimes arising out of conduct alleged to have occurred between June 1, 2000, and November 27, 2004. At the request of Lt. Phister and the two other task force members, the federal district court dismissed the civil action against them due to the pending criminal charges against Michel.

{¶ 18} Lt. Phister testified that while the task force investigated other owners and operators of gaming arcades, Michel owned or operated one quarter of the arcades within the jurisdiction. The lieutenant testified that closing Michel's arcades in effect eliminated other such businesses that closed upon learning of the seizures of Michel's games. Michel admitted that he closely monitored other gaming operations and that he knew that he was the first arcade owner or operator in Ohio under the new law and that his stores were the biggest money-makers.

{¶ 19} Lt. Phister testified that after disposition of the Georgekopolous, Trammell, and Smallwood cases, the prosecutor's office did not allow the police to initiate new investigations into other arcades because the prosecutor wanted the state legislature to clarify the law regarding skill-based amusement games. Lt. Phister testified, however, that although he was not allowed to seek other search warrants, he was authorized to proceed on the pending investigations involving Michel, Zbinden, and Amanda Enterprises, Inc. Those investigations did not center around the Tic Tac Fruit game.

{¶ 20} Lt. Phister testified that these types of investigations are time-consuming and require expert evaluation. Lt. Phister testified that the state's original expert, who aided the police in obtaining the November 2004 search warrant of Michel's property, was deployed to Iraq for 14 months during the subsequent ongoing investigation. The lieutenant testified that the police first put together the money-laundering case against Michel and his codefendants. He testified that by the time they were ready to work on the gambling cases, the first expert,

William Reidthaler, had been deployed and they had to seek another expert in his absence.

{¶ 21} The trial court found that the police pursued prosecutions against Georgekopolous and Trammell in Akron, as well as a defendant in Barberton. The trial court further found that Michel's partner, Denny Zbinden, had been prosecuted. Zbinden's case was disposed of as a result of a plea agreement. These findings were supported by competent, credible evidence.

{¶ 22} Applying the trial court's factual findings to the law, it is clear that the trial court erred in concluding that Michel established a prima facie case of selective prosecution. Even assuming, without so determining, that the 2005 prosecutions of three others for similar conduct, arising out of the course of the same years-long investigation, were not contemporaneous enough with Michel's prosecution to show the prosecution of others similarly situated, the trial court completely discounted the fact that Michel was not prosecuted alone. The state proceeded against two others, namely Denny Zbinden and Amanda Enterprises, Inc., at the same time as it proceeded against Michel. Zbinden was involved in only two arcades, and there is no evidence in the record that Michel had any interest in Amanda Enterprises, Inc. Accordingly, Michel failed to meet the first prong of the *LaMar* test.

{¶ 23} The test is set out in the conjunctive, so that Michel bears the burden of presenting evidence on both prongs. Because he failed to establish the first prong of the test to make a prima facie showing of selective prosecution, the trial court erred by granting his motion to dismiss. The state's assignment of error is sustained.

### III

{¶ 24} The state's sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

MOORE and DICKINSON, JJ., concur.