[Cite as *State v. Moses*, 2014-Ohio-1748.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 13AP-816 |
| | | (M.C. No. 2012 CRB 29789) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Anthony Moses, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 24, 2014

*Richard C. Pfeiffer, Jr.*, City Attorney, and *Orly Ahroni*, for appellee.

*Ambrose Moses, III*, for appellant.

APPEAL from the Franklin County Municipal Court

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Anthony Moses, appeals from a judgment of the Franklin County Municipal Court finding him guilty of assault, in violation of R.C. 2903.13(A), and disorderly conduct, in violation of Columbus City Code 2317.11(A)(1). For the following reasons, we affirm the judgment of the trial court.

I. Facts and Procedural History

{¶ 2} The evidence presented at trial showed that on August 19-20, 2012, the victim, Nicholas D. Klacik, went to the Ugly Tuna Saloona in Columbus with two of his roommates, Graham McCready and Steven Stanislaw. Appellant was working as a DJ at the bar, performing on an elevated stage that had a DJ table located in the center.

{¶ 3} Testimony at trial indicated Klacik, McCready, and Stanislaw sat at a table approximately 25-30 feet from the stage drinking beer. Shortly after arriving at the bar, Klacik walked to the DJ stage to request appellant play a specific song. Klacik and

appellant got into a verbal confrontation. Appellant then turned off the music and said into the microphone that he would give Klacik until the count of three to "get out of my face." (July 22, 2013 Tr. 69.) Appellant then punched Klacik in the face. Klacik suffered a chipped tooth and damage to his lip.

{¶ 4} Moments after the altercation, the bar's security staff removed Klacik from the bar. After leaving the bar, Klacik, McCready, and Stanislaw walked back to their apartment. Soon thereafter, McCready went to a nearby house where he saw a police officer and asked her to come to the apartment. The officer took statements from Klacik, McCready, and Stanislaw. Because appellant's identity was unknown, the officer referred Klaick to the prosecutor's office.

{¶ 5} According to the record, on October 25, 2012, Klacik went to the Columbus City Prosecutor's Office to file a criminal complaint against appellant. The prosecutor's office could not file charges until it confirmed appellant's identity. Approximately two weeks later, on the morning of November 6, 2012, the prosecutor evaluated Klacik's complaint and found probable cause existed to file charges as soon as the prosecutor's office confirmed appellant's identity. Later that morning, appellant went to the prosecutor's office to file a criminal complaint against Klacik.[1]

{¶ 6} On November 27, 2012, the prosecutor filed charges against appellant for one count of assault, in violation of R.C. 2903.13(A), and one count of disorderly conduct, in violation of Columbus City Code 2317.11(A)(1). Appellant filed a motion to dismiss for selective prosecution and a motion to compel discovery prior to trial. At the hearing on the motions, appellant withdrew his motion to compel and the court denied his motion to dismiss.

{¶ 7} Appellant waived trial by jury and the trial court held a hearing on July 22, 2013. Appellant moved for judgment of acquittal under Crim.R. 29 at the close of the state's case. The trial court denied appellant's motion. The trial court found appellant guilty of both assault and disorderly conduct in a written decision dated July 29, 2013. Appellant moved for a new trial on August 8, 2013. The trial court denied that motion in a written decision filed August 22, 2013.

---

[1] Though not in the record, during oral argument, counsel for appellant said that someone called the bar on November 6 and asked about the incident. It was after that phone call that appellant went to the prosecutor's office to file a cross-complaint.

{¶ 8} Appellant timely appealed his convictions for assault and disorderly conduct. Appellant also appeals from the trial court's denial of his motion to dismiss for selective prosecution, denial of his motion for a judgment of acquittal, and denial of his motion for a new trial.

## II. Assignments of Error

{¶ 9} On appeal, appellant assigns the following 11 errors for our review:

1. The trial court and the prosecutor knew that the perception of racial discrimination in Ohio's criminal justice system has a basis in statistical fact, and committed structural error and fundamental error when they opposed and denied Moses' motion to dismiss due to selective prosecution.

2. It was structural error and fundamental error for the prosecutor, after deciding to prosecute Anthony Moses, to interrogate Moses without the presence or assistance of his attorney, thus denying him Fifth, Sixth, and Fourteenth Amendment rights.

3. It was structural error and fundamental error for the prosecutor, after deciding to prosecute Moses, and in violation of the prosecutor's own policy, to refuse to assign Moses' cross-filed complaint against the state's prosecuting witness to a special prosecutor for probable cause purposes concerning whether the state's prosecuting witness engaged in unlawful conduct, including but not limited to, disorderly conduct in violation of Columbus City Code §2317.11(B).

4. It was structural error and fundamental error for the prosecutor, acting under color of law, and having no evidence to the contrary, to abuse his discretion by purposefully undermining, mischaracterizing, and misapplying statements set forth in the Columbus Division of Police's Preliminary Investigation which stated, categorically, that the State's witness, Nicholas Klacik, was intoxicated.

5. The trial court erred in denying Moses' motion for a judgment of acquittal.

6. The trial court erred in denying Moses' motion for a new trial.

7. The state's use of false testimony at trial that the prosecutor knew, or should have known, was false was plain error,

structural error, and fundamental error which was prejudicial to Moses and denied him a fair trial.

8. The trial court erred as a matter of law in failing to apply the law of defense of property to the facts of this case.

9. The trial court erred as a matter of law and failed to properly apply the law of self-defense to the facts of this case.

10. The trial court, as trier of fact, lost its way and made a finding of guilty that was against the manifest weight of the evidence and is not supported by sufficient, reliable, or credible evidence.

11. The trial court's finding that Moses did not act in self-defense was against the manifest weight of the evidence.

## III. Discussion

{¶ 10} For ease of discussion, we will consider appellant's assignments of error out of order.

### A. First and Fourth Assignments of Error: Selective Prosecution

{¶ 11} In his first and fourth assignments of error, appellant claims the trial court erred when it failed to dismiss the charges against him due to selective prosecution based on appellant's race. Appellant argues the prosecutor discriminated against him based on his race because the prosecutor charged appellant but did not approve charges on his cross-complaint against the victim, a white male.

{¶ 12} "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *State v. Getsy*, 84 Ohio St.3d 180, 203 (1998), citing *United States v. Armstrong*, 517 U.S. 456, 463 (1996).

{¶ 13} The Supreme Court of Ohio examined a selective prosecution claim in *State v. Flynt*, 63 Ohio St.2d 132, 134 (1980), and articulated a two-part test for establishing a prima facie claim of selective prosecution:

> To support a [claim] of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2)

that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

*Id.*, quoting *United States v. Berrios* 501 F.2d 1207, 1211 (2d Cir.1974).

{¶ 14} " 'A mere showing that another person similarly situated was not prosecuted is not enough; a defendant must demonstrate actual discrimination due to invidious motives or bad faith.' " *Cleveland v. Trzebuckowski*, 85 Ohio St.3d 524, 532 (1999), quoting *State v. Freeman*, 20 Ohio St.3d 55, 58 (1985). "Absent some demonstration of an invidious motive, [a] court will not presume intentional or purposeful discrimination from a mere showing of different treatment." *State v. Lamar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 46, citing *Freeman* at 58.

{¶ 15} A trial court is required to grant an evidentiary hearing if the defendant demonstrates a "colorable entitlement" to a selective prosecution claim. *State v. Wasmus*, 10th Dist. No. 94APA07-1013 (Apr. 27, 1995). However, a "defendant is not entitled to an evidentiary hearing on a selective prosecution defense unless he sets forth a prima facie claim." *State v. Powell*, 4th Dist. No. 05CA3024, 2006-Ohio-5031, ¶ 23. Both the Supreme Court of Ohio and the United States Supreme Court have noted that the burden in maintaining a selective prosecution claim is on the defendant as the prosecutor enjoys a presumption that his actions were non-discriminatory in nature. *State v. Keene*, 81 Ohio St.3d 646 (1998); *United States v. Armstrong*, 517 U.S. 456, 464 (1996). "The decision whether to prosecute a criminal offense is generally left to the discretion of the prosecutor." *Lamar* at ¶ 43, citing *Armstrong* at 464.

{¶ 16} A complete review of the trial court record indicates appellant is unable to provide clear evidence on either prong of the *Flynt* test to establish a prima facie claim of selective prosecution. First, appellant has not provided any evidence that the prosecutor failed to prosecute other similarly situated individuals for identical conduct. Second, appellant offers no evidence demonstrating that the prosecution singled him out for criminal charges because of his race or in any other way acted in bad faith or pursuant to an "invidious motive."

{¶ 17} Accordingly, the trial court did not commit error in denying appellant's motion to dismiss due to selective prosecution. We overrule appellant's first and fourth assignments of error.

## B. Second and Third Assignments of Error: Fifth and Sixth Amendment Violations

{¶ 18} Appellant's second and third assignments of error claim his Fifth and Sixth Amendment rights were violated when he was interviewed at the prosecutor's office after the prosecutor had found probable cause to file criminal charges against him.

{¶ 19} On the morning of November 6, 2012, Assistant Prosecutor Melissa Hicks found probable cause existed to file charges against appellant if his identity could be verified. Later that day, appellant went to the Columbus City Prosecutor's Office to file a criminal cross-complaint against Klacik. Hicks interviewed appellant, and, as a result, the prosecutor's office identified appellant as the assailant in Klacik's criminal complaint filed on October 25, 2012.

{¶ 20} Appellant argues that the prosecutor's office violated his Fifth and Sixth Amendment rights by "interrogating" him without the presence of an attorney, interviewing him without first obtaining a waiver of legal representation, and by failing to assign appellant's complaint to a special prosecutor.

{¶ 21} The Fifth Amendment to the United States Constitution, applied to the states pursuant to the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." In order to protect this right, a criminal suspect in a custodial interrogation must be informed of his constitutional rights to remain silent and to have defense counsel. *Miranda v. Arizona*, 384 U.S. 436, 471 (1966).

{¶ 22} "A custodial interrogation is questioning initiated by law enforcement after a suspect has been formally arrested or had his freedom restrained in such a way that it is the equivalent of a formal arrest." *State v. Watkins*, 10th Dist. No. 12AP-345, 2013-Ohio-804, ¶ 27, citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983). Further, a court must examine the totality of the circumstances when determining how a reasonable person would have understood the interrogation. *Stansbury v. California*, 511 U.S. 318, 323 (1994). The relevant inquiry is whether "a reasonable person in the individual's position

would have believed that he or she was not free to leave given the totality of the circumstances." *State v. Simpson*, 10th Dist. No. 01AP-757, 2002-Ohio-3717, ¶ 33, citing *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

{¶ 23} The Sixth Amendment to the United States Constitution, applied to the states pursuant to the Fourteenth Amendment, guarantees that in all criminal prosecutions, the accused shall have the right to assistance of counsel for his defense. *State v. Wyche*, 10th Dist. No. 01AP-361 (Jan. 22, 2002), citing *McNeil v. Wisconsin*, 501 U.S. 171 (1991). However, the right to counsel does not attach until adversarial proceedings commence by formal criminal charges, a preliminary hearing, an indictment, information, or an arraignment. *Wyche*, citing *Kirby v. Illinois*, 406 U.S. 682, 689 (1972).

{¶ 24} Here, appellant was not subjected to custodial interrogation. Rather, appellant voluntarily went to the prosecutor's office to file a complaint against Klacik. Nothing prevented appellant from leaving the interview at any time, nor did appellant produce any evidence demonstrating he believed he was not free to leave. Furthermore, the state had not filed formal charges against appellant when he went to the prosecutor's office; charges were filed on November 27, 2012. Because appellant was not subject to custodial interrogation nor had formal charges been filed against him, his Fifth and Sixth Amendment rights were not implicated.

{¶ 25} Based on the foregoing, we overrule appellant's second and third assignments of error.

### C. Fifth, Seventh, and Tenth Assignments of Error: Insufficient Evidence and Manifest Weight of the Evidence.

{¶ 26} In his fifth assignment of error, appellant claims insufficient evidence supported his convictions. Similarly, appellant's tenth assignment of error argues the trial court's convictions were against the manifest weight of the evidence. Appellant's seventh assignment of error argues that false testimony at trial was prejudicial and denied him a fair trial. We find appellant's arguments unpersuasive.

{¶ 27} When reviewing the lower court's record for sufficiency of the evidence, the appellate court's relevant inquiry is whether the evidence presented, viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Mahone*, 10th Dist.

No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 28} A manifest weight challenge requires this court to weigh the evidence to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Cruz-Altunar*, 10th Dist. No. 11AP-1114, 2012-Ohio-4833, ¶ 13, citing *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 220. A court of appeals should only reverse a trial court's conviction on manifest weight grounds in exceptional circumstances. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 29} Similar to an insufficient evidence challenge, when addressing a manifest weight challenge the trier of fact is given great deference in our review. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 26. An appellate court may consider the credibility of witnesses when conducting a manifest weight review. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 30} R.C. 2903.13(A) states, in part, "[n]o person shall knowingly cause or attempt to cause physical harm to another." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 31} Further, Columbus City Code 2317.11(A)(1) states, in part, "No person shall recklessly cause inconvenience, annoyance, or alarm to another, by * * * engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior."

{¶ 32} At trial, appellant admitted he knowingly punched Klacik in the mouth with his fist. Klacik testified appellant struck him in the face, causing damage to his tooth and lip which required medical treatment. The state presented photographic evidence of the

injuries. Furthermore, both of Klacik's roommates testified at trial and corroborated Klacik's account of the incident.

{¶ 33} In support of his manifest weight argument, appellant claims Klacik testified untruthfully during the trial and that the other witnesses lied and "infringed upon the integrity of the court." (Appellant's brief, at 45.) Specifically, appellant claims that because Klacik could not recall the number of steps onto the DJ's stage, no part of his testimony is credible. Appellant further argues that because Klacik was untruthful regarding whether he consumed any drinks prior to going to the bar, the court may not consider any of his testimony.

{¶ 34} This court has stated that where the basis for a manifest weight argument lies in witnesses' conflicting testimony or the credibility of the witnesses, the court will decline to substitute its own judgment for that of the trier of fact. *Whitehall v. Ruckman*, 10th Dist. No. 07AP-445, 2007-Ohio-6780, ¶ 16. "While appellant asserts the prosecution's witnesses were either lying or mistaken in their testimony, the * * * trier of fact was in the best position to determine the credibility of the testimony presented." *Id.* A trier of fact is free to believe or disbelieve all or any of the testimony. *State v. Jackson,* 10th Dist. No. 01AP-973 (Mar. 19, 2002). *See also State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21 (stating an appellant presenting a manifest-weight argument is not entitled to a reversal merely because inconsistent evidence was presented at trial).

{¶ 35} The trial court's written decisions specifically addressed the credibility of the testifying witnesses. In its Entry and Order following appellant's trial, the court stated:

> As the trier of fact and the sole judge of the credibility of the witnesses the Court applied an analysis of not only the truthfulness of the witnesses but also the impact of the instances when the witnesses were found to not be truthful. There were issues on both sides of this case where a witness was found not to be truthful. In this instance the lack of truthfulness was found to be more substantive on the part of the Defendant.

(R. 46, at 2.)

{¶ 36} The trial court addressed the same concern in its denial of appellant's motion for a new trial. The court's Entry and Order stated that in response to issues

raised by appellant with respect to witness credibility and appellant's claim for defense of property:

> [T]o ease [defense] counsel's misgivings the court will briefly give further explanation as to why the testimony of the defendant and witnesses support the finding of guilt.
>
> * * *
>
> [D]efendant was not convincing in any testimony that he provided to attempt to convince the court that even he believed he or his equipment were in danger.
>
> * * *
>
> As the trier-of-fact the court is not required to believe any one account. Rather the court can determine if all or parts of the testimony presented are worthy of reliability. The court acknowledged that the prosecuting witness was not truthful about his alcohol consumption however, that was ultimately a trivial issue in the consideration of the court particularly in light of the testimony of the other witnesses and the defendant.

(R. 56, at 1-2.)

{¶ 37} This court, deferring to the trial court's evaluation of witness credibility, finds the evidence presented at appellant's trial was sufficient to support the convictions, the convictions were not against the manifest weight of the evidence, and the minor inconsistencies did not prejudice appellant. Accordingly, we overrule appellant's fifth, seventh, and tenth assignments of error.

### D. Assignments of Error Six, Eight, Nine, and Eleven: Self-Defense and Defense of Property

{¶ 38} In assignments of error eight and nine, appellant argues the trial court erred when it failed to apply the law of either self-defense or defense of property to the facts presented at trial. Appellant also claims in his eleventh assignment of error, the trial court's finding he did not act in self-defense was against the manifest weight of the evidence. Finally, appellant argues in his sixth assignment of error that because the trial court did not apply either self-defense or defense of property, he is entitled to a new trial. This court disagrees with each argument.

{¶ 39} As we discussed in our resolution of appellant's tenth assignment of error, a manifest weight challenge requires this court to weigh the evidence to determine whether the trier of fact below clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Cruz-Altunar* at ¶ 13, citing *Lang* at ¶ 220. Further, a court of appeals should only reverse a trial court's conviction on manifest-weight grounds in exceptional circumstances. *Thompkins* at 387, quoting *Martin* at 175.

### 1. Self-Defense and Defense of Property

{¶ 40} The Supreme Court of Ohio has established that self-defense is an affirmative defense and the burden of establishing the defense is on the defendant. *State v. Palmer*, 80 Ohio St.3d 543, 563 (1997). To establish self-defense, appellant must demonstrate that "(1) the accused was not at fault in creating the situation giving rise to the affray; (2) the accused has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the accused must not have violated any duty to retreat or avoid the danger." *State v. Gripper*, 10th Dist. No. 12AP-396, 2013-Ohio-2740, ¶ 18, citing *State v. Melchior*, 56 Ohio St.2d 15, 20-21 (1978). If appellant "fails to prove *any one* of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." (Emphasis sic.) *State v. Jackson*, 22 Ohio St.3d 281, 284 (1986).

{¶ 41} Similarly, defense of property is also an affirmative defense that the defendant must establish. *State v. Perez*, 7th Dist. No. 09 MA 30, 2010-Ohio-3168, ¶ 11. One may act in self-defense, or in defense of property, at either the same time or in succession. *Columbus v. Eley*, 10th Dist. No. 91AP-803 (Jan. 28, 1992). Under a defense of property claim, a defendant must "present evidence that he reasonably believed that his conduct was necessary to defend his property against the imminent use of unlawful force, and the force used was not likely to cause death or great bodily harm." *State v. Bruckner*, 8th Dist. No. 63296 (Sept. 30, 1993), citing *Columbus v. Dawson*, 33 Ohio App.3d 141 (10th Dist.1986).

{¶ 42} Appellant argues he punched Klacik because appellant believed Klacik was about to strike him, thereby creating an imminent fear of great bodily harm. Furthermore, appellant argues he was concerned that Klacik would harm his expensive

DJ equipment. The trial court considered each of these arguments, as discussed below, and determined appellant's testimony did not establish the requisite belief to support either claim.

{¶ 43} Appellant's argument that the trial court's guilty verdict was against the manifest weight of the evidence is unavailing. The state provided three witnesses who each stated that prior to appellant striking Klacik, appellant turned the music down or off, informed the crowd that Klacik had to the count of three leave the DJ's stage, and then proceeded to punch Klacik in the face after appellant performed the countdown.

{¶ 44} Additionally, security personnel were present at the bar but appellant did not call security to the stage during the incident with Klacik, a fact that would refute any argument that appellant believed he was in imminent danger of death or great bodily harm. To the contrary, appellant took the time to turn down the music, get on the microphone, and address the crowd. Appellant clearly demonstrated he did not consider himself to be in imminent danger.

{¶ 45} Based on this testimony, the trial court, as the trier of fact, did not find appellant demonstrated, by a preponderance of the evidence, that he actually believed he was in imminent danger of bodily harm.

{¶ 46} Additionally, in its written decision, the trial court determined that "[e]ven if the Court were to solely take the [appellant's] testimony into account, the Court does not find that the [appellant] has proven that he was not at fault in creating the situation giving rise to the assault." (R. 46, at 2.) Relying on the testimony presented, the trial court found appellant joked with Klacik in an "insulting manner," "publically humiliate[d]" Klacik instead of alerting security, and made "derogatory statements" at Klacik's expense. (R. 56, at 1.) By his own admission, appellant got on the microphone and addressed the audience in an attempt to make a joke at Klacik's expense.

{¶ 47} Further, the trial court found appellant's testimony regarding his defense of property claim and his alleged concern for his equipment "failed to conclusively prove that there was anything reasonable about a belief of that nature." (R. 56, at 1.) After a review of the entire record, we do not find the trial court, as the trier of fact, clearly lost its way, creating a manifest miscarriage of justice.

### 2. Motion for New Trial

{¶ 48}   The appellant further argues that as a result of the trial court failing to recognize his affirmative defenses, the trial court erred when it denied his motion for a new trial.   Specifically, appellant argues minor inconsistencies in the trial testimony dictate the court should not accord any probative weight to the testimony of the state's witnesses.  We do not agree with appellant's argument.

{¶ 49} The decision to grant or deny a motion for a new trial rests in the sound discretion of a trial court.  *State v. Lei*, 10th Dist. No. 05AP-288, 2006-Ohio-2608, ¶ 19, citing *State v. Schiebel*, 55 Ohio St.3d 71 (1990), paragraph one of the syllabus.  The trial court has the discretion to judge witness credibility when it considers testimony in a motion for a new trial.  *Lei* at ¶ 19, citing *State v. Kirkland*, 10th Dist. No. 97AP-873 (Apr. 9, 1998).  Accordingly, an appellate court will not "disturb the decision of a trial court on a motion for a new trial absent an abuse of discretion."  *Id.*  Abuse of discretion is more than an error of either law or judgment, and, instead, "implies that the court's attitude is unreasonable, arbitrary or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  This court has described the decision to grant a motion for a new trial as an "extraordinary measure" that is appropriate only when "the evidence presented weighs heavily against conviction."  *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 35 (10th Dist.), citing *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶ 50} As discussed thoroughly above, the trial court's verdict was supported by sufficient evidence and is not contrary to law.  The court, as the trier of fact, expressly found the state's witnesses' testimony credible.  Specifically, each of the state's witnesses testified appellant counted down over the microphone prior to striking Klacik.  Based on the testimony, the court concluded appellant was not in fear of imminent danger to himself or his equipment, and, therefore, neither self-defense nor defense of property applied.

{¶ 51} The trial court's conviction was not against the manifest weight of the evidence, the trial court correctly found that neither self-defense nor defense of property applied, and the trial court did not abuse its discretion in denying appellant's motion for a new trial. Accordingly, appellant's assignments of error six, eight, nine, and eleven are overruled.

## IV. Conclusion

{¶ 52} We overrule appellant's eleven assignments of error and affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

SADLER, P.J., and CONNOR, J., concur.

————————————