[Cite as *State v. Horsley*, 2018-Ohio-1591.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 16CA3787 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| SHANNON L. HORSLEY JR., | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 04/23/18** |

_____

APPEARANCES:

Richard E. Wolfson, Richard E. Wolfson, Esq., LLC, Portsmouth, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Pat Apel and Julie Cooke Hutchinson, Scioto County Assistant Prosecuting Attorneys, Portsmouth, Ohio, for Appellee.

_____

Per Curiam.

{¶1} Shannon Horsley appeals from his conviction for one count of rape after he was found guilty by a jury after a five-day trial. On appeal, Appellant contends that 1) the trial court erred in overruling his motion for discharge on grounds of speedy trial in violation of his statutory and constitutional rights; 2) the trial court erred in overruling his motion for a special prosecutor and dismissal with notice of defense of selective

prosecution; and 3) his conviction was against the sufficiency and manifest weight of the evidence.

{¶2} Because we find the trial court's decision denying Appellant's motion for discharge was based upon competent, credible evidence, we find no merit to Appellant's first assignment of error and it is overruled. Likewise, because we find that the trial court's denial of Appellant's motion for dismissal based upon selective prosecution and for a special prosecutor was based upon competent, credible evidence, and because we find no abuse of discretion related to the trial court's application of the rape shield law, we find no merit to Appellant's second assignment of error and it is also overruled. Finally, in light of our determination that Appellant's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, we find no merit to Appellant's third assignment of error and it is overruled as well. Having found no merit in any of the assignments of error raised by Appellant, the decision of the trial court is affirmed.

## FACTS

{¶3} Appellant was indicted on August 22, 2014 on five counts of rape, all felonies of the first degree and in violation of R.C. 2907.02(A)(1)(b) and 2907.02(B). Count one alleged Appellant raped a

child, age ten, between the time periods of August 1, 2012 and October 29, 2012. Count two alleged Appellant raped a child, age ten, between the time periods of October 1, 2012 and October 29, 2012. Count three alleged Appellant raped a child, age eleven, between the time periods of November 1, 2012 and May 30, 2013. Count four alleged Appellant raped a child, ages eleven and twelve, between the time periods of October 1, 2013 and March 30, 2013. Count five alleged Appellant raped a child, age twelve, on June 19, 2014. The same child was the subject of each count, is the victim herein, and is the daughter of Appellant's former girlfriend, who also shares another child with Appellant. A later-filed amended bill of particulars alleged each of the incidences of rape involved the use of force.

{¶4} The indictment was filed following a report made by the victim and a subsequent investigation. A review of the record reveals that at the time of the alleged crimes the victim lived in a house trailer in South Webster, Ohio, with Appellant's mother, Karen Horsley, who had legal custody of her, and that Appellant lived in another trailer right next door. During a weekend away with her biological father, David Artressia, Jr., the victim reported to a friend, who was with them on their trip, that Appellant had been touching her. This was then reported to Appellant's father, who immediately took her to Southern Ohio Medical Center to be evaluated.

From there, the victim went to Adena Medical Center, where she was examined by Jamie Meyers, a Sexual Assault Nurse Examiner (SANE). A rape kit was performed on the victim while she was at Adena Medical Center. The victim was then referred to the Child Protection Center, where a forensic interview was conducted, as well as a physical evaluation by Dr. Sathish Jetty.

{¶5} It appears Appellant was confronted by Artressia, Jr. the next morning at the residence of David Artressia, Sr.[1] Appellant denied the accusations and claimed that the issue was really about custody, and that the victim wanted an excuse to live with her father, rather than with Appellant's mother, Karen Horsley, who had legal custody of her. However, a subsequent investigation confirmed the presence of Appellant's semen on the victim's bed sheets and her dress, which was in her bedroom.

{¶6} During the course of the investigation, the victim told investigators that Appellant had been raping her daily for over a year in various locations, including other trailers on the property where they lived, in Appellant's truck, on the side of the road on the way home from basketball practice one time, and on June 19, 2014, in her bedroom located in Karen Horsley's trailer. The record reveals the victim also alleged she had

---

[1] According to the record, Appellant and the Artressias worked together and commonly met at Artressia, Sr.'s house prior to reporting to a jobsite.

been raped by another individual, Appellant's nephew Jacob Tackett, in September of 2013. This allegation was made by the victim during her forensic interview at the Child Protection Center, and again to Detective Jodi Conkel.

{¶7} Appellant was subsequently indicted, as detailed above, and arrested on August 26, 2014. A long litigation process ensued, with extensive motion practice by both parties, but primarily by Appellant. Several of the motions at issue are discussed in more detail below. However, we briefly note that as a result of a successful motion in limine filed by the State, the trial court made a pre-trial determination that the rape shield law applied to exclude any mention of or questioning at trial regarding the victim's allegation that she had also been raped by another individual.

{¶8} The jury trial of this matter was continued several times at the request of Appellant, as will also be discussed in more detail below, resulting in Appellant not being brought to trial until November 16, 2016. The record further reveals Appellant was jailed from the time of his arrest until he was brought to trial. Pertinent to this appeal, aside from the continuances requested by Appellant, one hearing on a motion in limine was continued by the trial court sua sponte, which resulted in a forty-nine day

delay in hearing the motion.  Appellant moved for discharge on speedy trial grounds following the court's sua sponte continuance; however, Appellant's motion was denied by the trial court.

{¶9} When the matter was finally brought to trial on November 16, 2016, the State presented several witnesses including David Artressia, Jr. and Sr., Shawn Lodwick (the friend that the victim initially reported Appellant's conduct to), SANE Jamie Myers, Drs. Sathish Jetty and Timothy Mynes, Detective Jodi Conkel, forensic scientist Erica Jimenez, and finally the victim.  The victim testified, pertinent to this appeal, that she was in her bed asleep wearing a cheetah print dress on June 19, 2014.  She testified that Appellant came into her room, took her clothes off of her and forcibly raped her.  She testified she resisted, screamed and cried, but that no one else heard her.  She testified that after Appellant was finished, she used a towel to wipe the semen off of her leg.

{¶10} Detective Conkel testified that she took items from the victim's bedroom pursuant to a warrant, including a bath towel, a pair of panties, the bed sheet and a cheetah dress.  The record reveals that Appellant's DNA was not found on the towel, but that his semen was found on the bed sheet and dress.  The record further reveals that the victim's DNA was not present on the bedsheet or her dress, and that the towel was not tested for the presence

of her DNA. The record further reveals that the DNA results from the tests performed on the victim's panties were excluded from evidence. Additional pertinent testimony from the State's witnesses will be discussed below under Appellant's third assignment of error.

{¶11} Appellant also presented several witnesses in his defense, including Amanda Gatti (Scioto County Children Services case worker), Dr. Rebecca Schoettle (the victim's pediatrician during the relevant time period), Sandra Smith (the victim's assistant school principal), Scott Holstein (the victim's school principal), Ada Mills (the victim's grandmother), Corissa Boggs (the victim's counselor at Shawnee Family Health Center), Karen Horsley (Appellant's mother), and Appellant. The gist of Appellant's theory at trial was that this was all a ploy by the victim to be able to live with her father, where she could see her "friend" Shawn Lodwick. Through his witnesses, Appellant sought to prove that the victim's testimony at trial was not credible because she had never reported any sexual abuse or the alleged rapes to any of her school teachers, counselors, childrens' services caseworker or doctors, and that the family lived in such close quarters it would have been known if something like this was occurring. He further sought to provide an alternative explanation for the presence of his DNA on the victim's bed sheet and dress, claiming that he had masturbated in the

victim's bedroom when she was not there. Appellant argued the absence of forensic evidence of the victim's DNA on her dress or bed sheet was consistent with his theory.

{¶12} During their deliberations, it appears that the jury sent a question prior to rendering its verdicts asking the trial court if it could decide on four counts and be hung on one count. In response, the court instructed the jury to try to reach a verdict on all counts. Ultimately, after a six-day jury trial, the jury acquitted Appellant on counts one through four, but found him guilty on count five. The trial court subsequently sentenced Appellant to an indefinite prison term of twenty-five years to life. Appellant now brings his timely appeal, setting forth three assignments of error for our review.

## ASSIGNMENTS OF ERROR

"I.    THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO DISCHARGE ON GROUNDS OF SPEEDY TRIAL IN VIOLATION OF HIS STATUTORY AND CONSTITUTIONAL RIGHTS.

II.    THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR SPECIAL PROSECUTOR AND DISMISSAL WITH NOTICE OF DEFENSE OF SELECTIVE PROSECUTION.

III.    APPELLANT'S CONVICTION WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."

## ASSIGNMENT OF ERROR I

{¶13} In his first assignment of error, Appellant contends the trial court erred in overruling his motion to discharge on speedy trial grounds, in violation of his statutory and constitutional rights. Appellant raises three issues under this assignment of error, including 1) whether the trial court's sua sponte continuance shifted charging speedy trial to the State; 2) whether the trial court's sua sponte continuance was reasonable and supported in sufficient detail; and 3) whether the trial court committed reversible error by not conducting a hearing on Appellant's May 25, 2016 objections or his May 31, 2016 motion to vacate the judgment entry of May 27, 2016. The State alleges Appellant has failed to set forth a prima face case to shift the burden to the State to demonstrate compliance with the speedy trial provisions. The State contends Appellant failed to specify he was being held solely on the charges at issue in order to invoke the triple count rule, which the State claims was fatal to his motion to discharge. The State alternatively claims Appellant was brought to trial within speedy trial limits.

STANDARD OF REVIEW

{¶14} Under Ohio's speedy trial statutes, if the State fails to bring a defendant to trial within the time required by R.C. 2945.71 and 2945.72, the court must discharge him upon motion made at or prior to the start of trial. R.C. 2945.73(B). The Supreme Court of Ohio has "imposed upon the

prosecution and the trial courts the mandatory duty of complying" with the speedy trial statutes. *State v. Singer*, 50 Ohio St.2d 103, 105, 362 N.E.2d 1216 (1977). Thus, we must strictly construe the speedy trial statutes against the State. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996). Appellate review of a trial court's decision to deny a motion to dismiss based on statutory speedy trial grounds presents a mixed question of law and fact. *State v. Nichols*, 4th Dist. Adams No. 12CA955, 2013–Ohio–308, ¶ 14. We accept the trial court's findings of fact if they are supported by competent, credible evidence, but we independently review the court's application of the law to the facts. *Id.*

{¶15} "When the defendant moves for discharge on speedy trial grounds and demonstrates that the State did not bring him to trial within the time limits set forth in the speedy trial statutes, the defendant has made a prima facie case for discharge." *State v. Cottrell*, 4th Dist. Ross Nos. 11CA3241 & 11CA3242, 2012–Ohio–4583, ¶ 10. The State then bears the burden to prove "that actions or events chargeable to the accused under R.C. 2945.72 sufficiently extended the time it had to bring the defendant to trial." *Id.* A person against whom a felony charge is pending must be brought to trial within 270 days after his arrest. R.C. 2945.71(C)(2). Each day the

defendant spends in jail "on the pending charge" counts as three days. *Id.* at

(E).  This is commonly referred to as the triple count rule.

LEGAL ANALYSIS

{¶16} Initially, we note that the State alleges on appeal that Appellant

failed to claim that he was being held solely on one charge or one indictment

only, and thus failed to present a prima facie case for discharge which

shifted the burden to the State to show compliance with speedy trial

requirements.  A review of the record reveals Appellant's June 13, 2016

motion for discharge on grounds of speedy trial alleged as follows, in

pertinent part:

> "Defendant has been in the Scioto County Jail on the instant
> felony charges since August, 2014.  Several requests for
> modification of bond have been denied, most recently on 24
> May 2016.  R.C. §2945.71(C)(2) requires Defendant brought to
> trial within 270 days of arrest.  R.C. §2945.71(E) requires each
> day Defendant is held against bond be counted as three (3)
> days, reducing to ninety (90) the days by which he must be
> brought to trial."

{¶17} In *State v. Green*, 4th Dist. Ross No. 01CA2641, 2002-Ohio-

3403, ¶ 12, this Court noted that "[t]he determination of whether an accused

is held solely on the pending charges is a legal conclusion dependent upon

the underlying facts." Citing *State v. Howard*, 4th Dist. Scioto No.

93CA2136, 1994 WL 67688 (Mar. 4, 1994).  We further explained in *Green*

at ¶ 12 that:

> "In reviewing speedy trial determinations we have never required, nor has any other court of appeal or the Ohio Supreme Court, the accused to recite verbatim that he or she was held 'solely on the pending charges.' Rather, it appears that courts use a "notice" approach. *See State v. Armstrong* (April [22], 1996), Scioto App. No. 95CA2346 (stating that the appellant created a prima facie case for discharge when he was incarcerated and 'has alleged {that} he was entitled to the "three for one" provision of R.C. 2945.71(E)') and *State v. Daniels* (May 11, 1994), Lawrence App. No. 93CA22 (stating that appellant presented a prima facie case for discharge by contending that he was held for more than ninety days)."

We conclude, based upon the foregoing, that Appellant sufficiently alleged application of the triple count rule in his motion for discharge.

{¶18} Further, a review of the record reveals that Appellant was arrested for the charges herein on August 26, 2014 and was not brought to trial until November 16, 2016. At the time Appellant filed his motion for discharge on June 13, 2016, he had been in jail awaiting trial for approximately twenty-three months, or 690 days. Thus, even without applying the triple count rule, it is clear Appellant was not brought to trial within 270 days. Based upon the language used in Appellant's motion for discharge, coupled with the number of days between the date of Appellant's arrest and the date the motion for discharge was filed, we conclude Appellant has sufficiently alleged and demonstrated a prima facie case for discharge. Therefore, the burden shifted to the State to demonstrate compliance with speedy trial requirements.

{¶19} Moving on, we point out that this case involved numerous filings and motion practice by both parties, but primarily by Appellant, and also included a number of continuances at the request of Appellant, as well as various waivers of speedy trial time. After reviewing the record, there appears to be a consensus between the parties, however, that as of February 10, 2015, it was determined Appellant had to be brought to trial by March 9, 2015.[2] Thus, at that point, the State had 27 calendar days to bring Appellant to trial to remain within speedy trial limits. Those days continued to be reduced until February 23, 2015, when Appellant filed a "Time Waiver" stating that he was, through counsel, waiving speedy trial requirements for ninety days. Accordingly, as of February 23, 2015, fourteen speedy trial days remained. After this date, Appellant went on to file several different motions, including motions for continuances asking the court to continue the jury trial on three separate occasions, motions to modify bond, motions for reconsideration, objections and a motion in limine, and additional waivers of speedy trial time.

{¶20} R.C. 2945.72(E) provides that the time within which an accused must be brought to trial may be extended by "[a]ny period of delay

---

[2] The record indicates the trial court directed the State to determine the date in which Appellant must be tried and that, as a result, the State filed a notice to the court on February 10, 2015, informing the court Appellant must be brought to trial by March 9, 2015. Throughout the remainder of the proceedings and currently on appeal, both the State and Appellant rely on that determination.

necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused[.]" "R.C. 2945.72(E) implicitly recognizes that when a motion is filed by a defendant, there is a 'period of delay necessitated'—at the very least, for a reasonable time until the motion is responded to and ruled upon." *State v. Sanchez*, 110 Ohio St.3d 274, 2006–Ohio–4478, 853 N.E.2d 283, ¶ 26.  Further, as observed by the Supreme Court of Ohio in *State v. King*, 70 Ohio St.3d 158, 160, 637 N.E.2d 903 (1994), "[i]t is well-settled law that an accused may waive his constitutional right to a speedy trial provided that such a waiver is knowingly and voluntarily made." Citing *Barker v. Wingo*, 407 U.S. 514, 529, 92 S.Ct. 2182 (1972).

{¶21} As set forth above, Appellant filed his first waiver of time on February 23, 2015 for a specified period of ninety days.  Thus, time was tolled according to this waiver until approximately May 23, 2015.  However, prior to the expiration of that time period, on May 13, 2015, Appellant filed a motion to continue the jury trial scheduled to begin May 18, 2015, citing in support his need to consult with a DNA expert.  The title of this filing was "Motion to Continue for DNA Expert Consultation" and stated "Defendant waives further time constraints in order to first meet with the expert witness allowed to assist in preparation of his defense."  Thus, this filing constituted

a second waiver of speedy trial, which did not contain a specified end date, but rather "waive[d] further time constraints[.]"  This waiver was duly noted by the trial court in its May 26, 2015, judgment entry which continued the scheduled jury trial "until further order of the court" and stated "[t]ime provisions of O.R.C. 2945.71 are hereby waived."  Appellant filed no objection or other pleading arguing that time had not been waived indefinitely.

{¶22} Thereafter, on September 9, 2015, the trial court issued a notice scheduling the matter for a two-day jury trial beginning on December 14, 2015.  However, on October 16, 2015, Appellant filed a motion to suppress and/or motion in limine, both of which constitute tolling events.  Four days later, on October 20, 2015, Appellant filed another motion to continue the December 14, 2015, jury trial, claiming his DNA expert was not available for trial on the scheduled dates.  Appellant then filed "Objections" on November 20, 2015, related to the State's request that his expert appear in person for a hearing on his qualifications.  Those "objections" contained a sentence stating Appellant "reserves objection on the grounds of a speedy trail [sic] (and/or his release on modified bond), tolled only on Defendant's motions, not objections by the State or preferred but not unavailable mean [sic] of electronic communication."  Although it appears Appellant may

have intended to revoke his prior time waivers by filing this objection, five days later Appellant filed another pleading entitled "Motion to Continue With Waiver Of Speedy Trial." This motion cited Appellant's expert's unavailability until the second week of January, 2016, and stated as follows:

> "Now comes Defendant, through counsel, to move the trial and preceding 702/Daubert hearing date of December 14, 2015 be continued with waiver of speedy trial constraints, pursuant to Local and Criminal Rules, case law, statute [sic] and the reasons stated."

The memorandum in support of this motion further stated that:

> "Because this is Defendant's request, speedy trial considerations are tolled and Defendant waives any objection to continuing the trial on those grounds, withdrawing any previous objection."

Thus, Appellant waived speedy trial time for a third time, indefinitely, and withdrew his previous objection.

{¶23} On February 2, 2016, the trial court issued a notice scheduling a five-day jury trial to begin on March 21, 2016. However, just prior to the scheduled trial date, on March 1, 2016, Appellant filed a motion in limine, to preclude use by the State of DNA test results. The State opposed the motion by filing a memorandum contra on March 9, 2016. The scheduled trial date passed and the trial court filed a judgment entry on March 22, 2016, indicating that a hearing on Appellant's motion in limine was proper, which

would be scheduled at the convenience of the court.[3]  The court thereafter filed a notice of hearing on March 30, 2016, scheduling a hearing on Appellant's motion in limine on May 20, 2016.

{¶24} The parties seem to agree that prior to the scheduled May 20, 2016 hearing the court informally indicated the hearing needed to be rescheduled due to the court's unavailability.  The record indicates that the trial court filed a scheduling notice on May 16, 2016, re-scheduling the hearing for July 8, 2016.  Thereafter, on May 18, 2016, Appellant filed a motion for bond reconsideration, citing the trial court's sua sponte continuance and Appellant's continued incarceration.  The trial court issued a judgment entry on May 24, 2016, denying the motion for bond reconsideration.  On May 25, 2016, Appellant filed "Objections to State's Proposed Judgment Entry," regarding the trial court's sua sponte rescheduling of the hearing on the motion in limine, arguing that he had not waived speedy trial limitations, contrary to a sentence contained in the proposed entry, and reserved the right to move for dismissal on grounds of speedy trial.  Thereafter, on May 27, 2016, the trial court filed its judgment entry formally continuing the hearing on the motion in limine.  The entry

---

[3] Although there was no request for continuance of the trial filed by any party, or any formal order filed by the trial court, it is clear from the record that the trial had to be continued as a result of Appellant's pending motion in limine that was yet to be heard or resolved on the date of the scheduled trial.  As such, assuming arguendo Appellant had not indefinitely waived speedy trial limits, we conclude this filing by Appellant constituted a tolling event.

cited the fact that the court itself was required to be in Columbus on the date of the hearing for a professional meeting, as well as the fact that Appellant had "waived speedy trial limitations in this case." Appellant filed a motion to vacate the judgment entry on May 31, 2016.

{¶25} The foregoing is the backdrop to the subsequent filing of Appellant's "Motion to Discharge On Grounds Of Speedy Trial" on June 13, 2016, followed by the trial court' denial of the motion on July 14, 2016. In the interim, it appears the hearing on the motion in limine was held on July 8, 2016. The trial court filed a notice on September 23, 2016, scheduling the matter for a five-day jury trial to begin on November 16, 2016. The court then issued its written decision and judgment entry on Appellant's motion in limine on October 14, 2016. Appellant filed yet another motion in limine on October 20, 2016, followed by a motion for a mistrial on October 25, 2016. The trial court issued a judgment entry denying the motion for mistrial on November 4, 2016. Appellant then filed a motion for special prosecutor and dismissal with notice of defense of selective prosecution, which was denied by the trial court on November 10, 2016, along with the motion in limine. On that same date, Appellant filed a motion for an evidentiary hearing and another motion for reconsideration, followed by a motion to submit a detailed jury questionnaire on November 15, 2016, the day before trial.

{¶26} Appellant does not dispute that all time was tolled against him from February 23, 2015 until May 20, 2016.  However, Appellant contends that the trial court's sua sponte continuance of the hearing on the motion in limine stopped the tolling and at that point speedy trial time began to run, with fourteen calendar days remaining at that point.  Appellant further argues that he did not indefinitely waive speedy trial time.

{¶27} We first turn our attention to the various time waivers filed by Appellant, which we believe are dispositive of Appellant's arguments on appeal, to a certain extent.  Despite Appellant's argument to the contrary, we believe Appellant's second and third waivers constituted indefinite waivers of speedy trial constraints.  As set forth above, it is well-settled law that an accused may waive his right to a speedy trial. *See State v. King, supra,* at 160.  As further observed by the Court in *King*:

> "Consistent with this principle, this court has found the statutory speedy trial provisions set forth in R.C. 2945.71 to be coextensive with constitutional speedy trial provisions. *State v. O'Brien* (1987), 34 Ohio St.3d 7, 516 N.E.2d 218. Thus, we have held that an accused's express written waiver of his statutory rights to a speedy trial, made knowingly and voluntarily, also constitutes a waiver of his speedy trial rights guaranteed by the United States and Ohio Constitutions. *O'Brien, supra,* paragraph one of the syllabus. Furthermore, this court has held that, for purposes of trial preparation, a defendant's statutory right to a speedy trial may be waived, with or without the defendant's consent, by the defendant's counsel. *State v. McBreen* (1978), 54 Ohio St.2d 315, 8 O.O.3d 302, 376 N.E.2d 593, syllabus." *Id.*

**{¶28}** Further, with respect to the character of the time waivers filed by Appellant, we note that the first waiver was limited in duration, for a period of ninety days. The next two waivers, however, did not specify an end date. As explained in *State v. Bray*, 9th Dist. Lorain No. 03CA008241, 2004-Ohio-1067, ¶ 8, "[a] waiver may be limited or unlimited in duration." The *Bray* court went on to explain as follows:

> " '[A] waiver that expressly waives the accused's right to a speedy trial under the statute without mentioning a specific time period is unlimited in duration.' *State v. Kovacek* (May 30, 2001), 9th Dist. No. 00CA007713, citing *O'Brien*, 34 Ohio St.3d 7, 516 N.E.2d 218 at paragraph two of the syllabus. *See, also, State v. Smith* (Dec. 22, 1999), 9th Dist. No. 98CA007144, citing *In re Fuller* (Dec. 14, 1994), 9th Dist. No. 16824 (finding that 'in the absence of a clearly articulated specific period of time, a waiver is of unlimited duration'); *State v. Lee* (Apr. 13, 1994), 9th Dist. No. 93CA005671 (rejecting defendant's argument that a waiver, not specifying a limited time frame, was only a waiver for the period of time from the date of the waiver to the originally scheduled date for trial). Furthermore, when a waiver fails to include a specific date as the starting point for the tolling of time, the waiver is deemed to be effective from the date of arrest. *State v. Harris* (Oct. 30, 1996), 9th Dist. No. 95CA006275, citing *State v. Baugh* (Jan 31, 1996), 9th Dist. No. 95CA006124. Once an accused has executed an express, written waiver of unlimited duration, 'the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection and demand for trial, following which the state must bring the accused to trial within a reasonable time.' *O'Brien*, 34 Ohio St.3d 7, 516 N.E.2d 218 at paragraph two of the syllabus." *Id.*

These principles were reaffirmed in *State v. Miller*, 2017-Ohio-5728, –
N.E.3d –, ¶ 29-30 (5th Dist.2017), where the court noted that a speedy trial
waiver that does not mention a specific time period is unlimited in duration,
and found that the waiver at issue was unlimited, despite assertions to the
contrary by the appellant. *See also State v. Maisch*, 173 Ohio App.3d 724,
2007-Ohio-6230, 880 N.E.2d 153, ¶ 28 (rejecting an argument a time waiver
"to allow his counsel opportunity to prepare for trial" is qualifying language
limiting the duration of a waiver because there was no specific period of
duration of the waiver).

{¶29} Here, we find that while Appellant's first waiver was of a
limited duration of ninety days, his second and third waivers were not.
Neither the second nor third waiver included a start or end date.  Further,
both appear to have waived time indefinitely as a matter of trial strategy in
order to consult with an expert and obtain expert testimony.  However, we
are mindful of the fact that a defendant can revoke a prior waiver of time.
As mentioned above, the Supreme Court of Ohio, in *State v. O'Brien, supra,*
held in paragraph two of the syllabus as follows:

> "Following an express, written waiver of unlimited duration by
> an accused of his right to a speedy trial, the accused is not
> entitled to a discharge for delay in bringing him to trial unless
> the accused files a formal written objection and demand for
> trial, following which the state must bring the accused to trial
> within a reasonable time."

The *O'Brien* Court reasoned that a trial court may reasonably rely upon a written waiver of speedy trial in the exercise of its duty of scheduling trials, and that a defendant is required to inform the court of an objection to a further continuance and reassertion of the defendant's right to a speedy trial. *Id.* at 9-10.

{¶30} Although Appellant filed "Objections" on November 20, 2015 stating he was reserving objections on grounds of speedy trial, he did not actually make an objection or demand to be brought to trial. Further, in his subsequent "Motion To Continue [Jury Trial] With Waiver Of Speedy Trial," which was filed just five days later on November 25, 2015, Appellant stated he "waive[d] any objection to continuing the trial on those grounds [his expert's unavailability], withdrawing any previous objection." The next time Appellant mentioned speedy trial was in his May 25, 2016 "Objection To State's Proposed Judgment Entry," in which he raised a complaint about the trial court's sua sponte decision to continue the hearing on his motion in limine. However, in that "Objection" Appellant merely "reserve[d] the right to move for dismissal on grounds of speedy trial." Thus, he once again made his reassertion of his speedy trial right tentative and did not demand to be brought to trial. Thus, we do not find that Appellant filed a formal,

written objection and demand for trial, as contemplated by *O'Brien*, prior to the filing of his motion to discharge on speedy grounds on June 13, 2016.

{¶31} Before we address Appellant's actual motion for discharge, however, we must address Appellant's argument related to the trial court's sua sponte continuance of the hearing on the motion in limine. The record indicates that the hearing on Appellant's motion in limine was originally scheduled to take place on May 20, 2016; however, the parties became aware of the court's need to reschedule the hearing and the State prepared an entry, apparently at the court's request, sua sponte continuing the hearing. Appellant, through counsel, opposed the continuance and filed an objection. The trial court filed a judgment entry on May 27, 2016, sua sponte continuing the hearing pursuant to R.C. 2945.72(H), based upon the court's unavailability on May 20, 2016 due to the need to attend a professional meeting in Columbus, noting Appellant had waived speedy trial limitations in this case. The trial court also noted that the court's docket was overcrowded at the time, and that the matters involved were complex. The entry further stated "that time shall continue to be tolled until the resolution of the case." The court also stated the hearing would be scheduled at the convenience of the court, understanding that both parties would need to

make arrangements for the travel of out of town witnesses.  The hearing was

ultimately rescheduled and held on July 8, 2016, or 49 days later.

{¶32} As noted above, R.C. 2945.72(H) provides: "The time within

which an accused must be brought to trial, or, in the case of a felony, to

preliminary hearing and trial, may be extended only by the following: * * *

The period of any continuance granted on the accused's own motion, and the

period of any reasonable continuance granted other than upon the accused's

own motion[.]"  As this Court has noted in *State v. Carr*, 4th Dist. Ross No.

12CA3358, 2013-Ohio-5312, ¶ 31:

> " 'Ideally, "[w]hen sua sponte granting a continuance under
> R.C. 2945.72(H), the trial court must enter the order of
> continuance and the reasons therefor by journal entry prior to
> the expiration of the time limit prescribed in R.C. 2945.71 for
> bringing a defendant to trial." ' *State v. Ramey*, 132 Ohio St.3d
> 309, 2012–Ohio–2904, 971 N.E.2d 937, ¶ 32, quoting *State v.
> Mincy*, 2 Ohio St.3d 6, 441 N.E.2d 571 (1982), syllabus.
> However, the Supreme Court of Ohio has 'recognized that an
> appellate court may affirm a conviction challenged on speedy-
> trial grounds even if the trial court did not expressly enumerate
> any reasons justifying the delay when the reasonableness of the
> continuance is otherwise affirmatively demonstrated by the
> record.' *Ramey* at ¶ 33. For the continuance to toll speedy trial
> time, '[t]he record must reflect that the continuance was
> "reasonable in both purpose and length." ' *State v. Martin*, 56
> Ohio St.2d 289, 293, 384 N.E.2d 239 (1978), quoting *State v.
> Lee*, 48 Ohio St.2d 208, 210, 357 N.E.2d 1095 (1976)."

{¶33} Here, the trial court expressly referenced R.C. 2945.72(H) in its

judgment entry and set forth its reasons for continuing the hearing.  The

court also explained that the hearing would be rescheduled at the convenience of the parties, noting travel arrangements would need to be made as well as the overcrowded state of the docket at the time. The court also reasonably relied on the fact that there had been a waiver of speedy trial time in the case. Although it took 49 days for the hearing to be held, we held in *Carr* that a 52-day continuance, while significant for an individual awaiting trial in jail, was not unreasonable " 'given the time constraints and complexity of a trial court's docket * * *' " *Carr* at ¶ 35; quoting *State v. Cottrell*, 4th Dist. Ross Nos. 11CA3241 & 11CA3242, 2012-Ohio-4583, ¶ 17 (involving a 58-day continuance of a jury trial). Thus, we find no error occurred with respect to the trial court's sua sponte continuance of the motion in limine hearing.

{¶34} Further, because an appropriate entry was filed within speedy trial limits, speedy trial time was tolled even absent an indefinite waiver of time by Appellant. Even assuming arguendo that Appellant's second and third waivers were not indefinite and that Appellant's objection to the trial court's continuance was sufficient to restart the speedy trial clock, by Appellant's own estimation, 14 calendar days remained as of May 20, 2016. The sua sponte continuance, which was filed May 27, 2016, was filed within

speedy trial limits and properly continued to toll time until the motion was actually decided by the court on October 14, 2016.[4]

{¶35} We now turn our attention to Appellant's June 13, 2016 motion for discharge on grounds of speedy trial, which was filed in the middle of an overarching tolling event related to the filing of Appellant's motion in limine. Having found that speedy trial time had been indefinitely waived by Appellant and that the waiver had not been revoked at the time Appellant filed his motion for discharge, and also having found that the trial court's sua sponte continuance filed on May 27, 2016 properly continued to toll time until the motion in limine was decided on October 14, 2016, Appellant did not demonstrate he was entitled to discharge when the motion was filed on June 13, 2016.

{¶36} We further note that once the decision on the motion in limine was filed on October 14, 2016, Appellant thereafter filed a series of additional motions, including another motion in limine, a motion for mistrial, a motion for a special prosecutor and dismissal with notice of selective prosecution, a motion for an evidentiary hearing, a motion for reconsideration and a motion to submit a detailed jury questionnaire, the last of which was not filed until the day before trial. Thus, assuming arguendo

---

[4] It was also discussed in *Carr* that a 120-day period was reasonable in the context of deciding a motion. *Carr* at ¶ 35.

time had not been indefinitely waived, Appellant's extensive motion practice between October 15, 2016 and November 15, 2016 continued to toll time against Appellant up to the day of trial.

{¶37} Finally, Appellant argues the trial court's failure to hold hearings on his May 25, 2016 objections and his May 31, 2016 motion to vacate the judgment entry of May 27, 2016 constitutes reversible error in light of the trial court's own local rule requiring a hearing. However, in light of our reasoning set forth above indicating Appellant had indefinitely waived speedy trial time, and even assuming arguendo he had not, that the trial court's sua sponte continuance met the requirements to toll time, and that time was tolled thereafter by Appellant's motion practice leading right up until the day of trial, we find any error by the trial court in failing to follow its own local rules was harmless error. Although it may be considered a technical legal error, it does not constitute reversible error.

{¶38} In light of the foregoing, we find no merit to the arguments raised under Appellant's first assignment of error. Accordingly, it is overruled.

## ASSIGNMENT OF ERROR II

{¶39} In his second assignment of error, Appellant contends the trial court erred in overruling his motion for a special prosecutor and dismissal

with notice of defense of selective prosecution. Appellant raises four issues under this assignment of error, including: 1) whether the trial court committed reversible error by not allowing the jury to know the alleged victim said she was raped by someone other than himself in September, 2013, at the same time she made her allegations against Appellant; 2) whether the trial court correctly applied the rape shield law when it supported the State's motion to exclude the alleged victim's simultaneous claim of a rape by someone other than Appellant; 3) whether the trial court committed reversible error by not having a hearing on the truth or falsity of the alleged victim's allegation she was raped by someone other than Appellant in September, 2013; and 4) whether the State engaged in a bad faith selective prosecution. The State responds by arguing that Appellant failed to demonstrate a prima facie case of selective prosecution and was not entitled to an evidentiary hearing on the matter.

## STANDARD OF REVIEW

{¶40} We begin by setting forth the standard of review when considering whether a trial court erred in denying a motion to dismiss based upon a claim of selective prosecution. In *State v. Powell*, 4th Dist. Scioto No. 05CA3024, 2006-Ohio-5031, ¶ 20, this Court reasoned as follows:

> "We conduct a de novo review of a trial court's decision regarding a motion to dismiss based upon a selective

prosecution defense. *See State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166; *State v. Spencer* (Nov. 4, 1998), Scioto App. No. 97CA2536 (both appearing to apply a de novo standard of review without expressly stating so). Thus, we independently determine whether the evidence establishes a prima facie claim of selective prosecution." (discretionary appeal not accepted for review as noted by *State v. Powell*, 113 Ohio St.3d 1413, 862 N.E.2d 843); *but see State v. Michel*, 181 Ohio App.3d 124, 2009-Ohio-450, 908 N.E.2d 456 (rejecting the de novo standard of review declared by the Fourth District in *State v. Powell, supra,* and instead reasoning that review of a trial court's decision regarding a motion to dismiss based upon a claim of selective prosecution presents a mixed question of law and fact, much like the review of a motion to suppress) and *Cleveland v. Oko*, 2016-Ohio-7774, 73 N.E.3d 1122, ¶ 15 (8th Dist.) (stating review of a trial court's determination regarding a motion to dismiss on selective prosecution grounds presents a mixed question of law and fact, relying on *State v. Michel, supra).*

Despite the foregoing, we adhere to precedent and follow the reasoning of *State v. Powell, supra,* which we believe was implicitly approved by virtue of the fact that a discretionary appeal to the Supreme Court of Ohio was subsequently denied.

## LEGAL ANALYSIS

**{¶41}** In *State v. Powell*, we noted in ¶ 21 that the Supreme Court of Ohio explained the framework for analyzing a selective prosecution defense in *State v. Lamar, supra,* at ¶ 43-44 as follows:

" 'The decision whether to prosecute a criminal offense is generally left to the discretion of the prosecutor. *United States v. Armstrong* [1996], 517 U.S. [456,] 464, 116 S.Ct. 1480, 134 L.Ed .2d 687. That discretion is, however, subject to

constitutional equal-protection principles, which prohibit prosecutors from selectively prosecuting individuals based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.*, quoting *Oyler v. Boles* (1962), 368 U.S. 448, 456, 82 S .Ct. 501, 7 L.Ed.2d 446. Although a selective-prosecution claim is not a defense on the merits to the criminal charge itself, a defendant may raise it as an "independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *State v. Getsy* (1998), 84 Ohio St.3d 180, 203, 702 N.E.2d 866.

To support a claim of selective prosecution, "a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *State v. Flynt* (1980), 63 Ohio St.2d 132, 134, 407 N.E.2d 15, quoting *United States v. Berrios* (C.A.2, 1974), 501 F.2d 1207, 1211.' "

Thus, a defendant's burden of establishing discriminatory prosecution is a heavy one, and the mere failure to prosecute other violators of a statute does not establish the defense of selective prosecution. *See State v. Hutchinson*, 4th Dist. Athens No. 03CA31, 2004-Ohio-4125; citing *State v. Freeman*, 20 Ohio St.3d 55, 58, 485 N.E.2d 1043 (1985) (the mere failure to prosecute other violators of a statute does not establish the defense of selective prosecution).

**{¶42}** As this Court has previously noted, selectivity in enforcement does not constitute a constitutional violation unless the discrimination is " 'intentional or purposeful.' " *Powell* at ¶ 22; citing *Flynt* at 134; quoting *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397 (1944).  Moreover, the mere existence of a potential discriminatory purpose does not, by itself, show that such purpose motivated a particular defendant's prosecution. *Freeman* at 58. " 'Absent some demonstration of an invidious motive, [a] court will not presume intentional or purposeful discrimination from a mere showing of different treatment." *LaMar* at ¶ 46.

**{¶43}** Furthermore, a "defendant is not entitled to an evidentiary hearing on a selective prosecution defense unless he sets forth a prima facie claim." *Powell* at ¶ 23; citing *Pepper Pike v. Dantzig*, 8th Dist. Cuyahoga No. 83425, 2004-Ohio-2562, ¶ 14.  As further observed in *Powell*, it was stated in *United States v. Hazel* (C.A.6, 1983), 696 F.2d 473, 475 as follows:

> " '[I]t is only when [a] prima facie showing has been made and the defendant has proven a "colorable entitlement" to a dismissal for selective prosecution, that an evidentiary hearing should be held. *United States v. Brown*, 591 F.2d 307, 310-11 (5th Cir.1979). * * * "[a] hearing is necessary only when the motion alleges sufficient facts to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose." *United States v. Larson*, 612 F.2d 1301, 1304-05 (8th Cir.1980).' "

{¶44} A review of the record reveals that just prior to trial, a series of motions was filed by both the State and Appellant. Pertinent to our discussion herein, the following motions were filed:

1.) November 2, 2016 - State's Motion in Limine (requesting that the trial court instruct the defendant "not to ask questions of any witnesses, including but not limited to the lab analysts, medical personnel or the victim which violate the rape shield law[,]" and specifically arguing that Defendant be prohibited from introducing medical records of the victim that "indicate that another individual may, at a different time, have raped the victim.").

2.) November 7, 2016 - Defendant/Appellant's Motion for Special Prosecutor and Dismissal With Notice of Defense of Selective Prosecution (arguing that pediatric, mental health, school and Children's Services' records of victim were admissible to show that the victim never reported any sexual abuse or activity during the relevant times and that the mandatory reporters never saw signs of abuse and that "[r]ape shield does not apply to a negative[,]" and also questioning why there had been no investigation regarding the victim's accusation, made during the Children's Protective Center interview and again to Detective Jodi Conkel, that she had also been raped by Defendant's seventeen-year-old nephew, Jacob Tackett.).

Appellant further argued in this motion that he was being selectively prosecuted in relation to a case note from a burglary conviction from 1996 which indicated he had engaged in lewd behavior for which he was never charged or convicted. Appellant argued that the attempt to use such evidence against him in the current case, along with the failure to investigate similar allegations, was evidence of selective prosecution.

3.) November 10, 2016 - Defendant's Motion for Evidentiary Hearing (arguing he was entitled to a hearing and an opportunity to call witnesses and authenticate records related to the victim's allegation of rape by another individual, rather than "the Court [basing] its ruling on an assumption of an allegation thereby not sufficiently proving its *prima facie* evidence.")

4.) November 10, 2016 - Defendant's Motion for Reconsideration (of the court's decision denying his motion for dismissal based upon defense of selective prosecution and again arguing he was entitled to an evidentiary hearing to prove that the victim alleged another raped her, rather than having the court "assume allegations of rape by another individual[.]")

5.) November 16, 2016 - State's Supplement Notice of Other Acts Evidence Exhibiting Modus Operandi (giving notice of the State's intention to introduce other acts evidence including "other acts of sexual assault which are the underlying offenses of his indictment and guilty plea in 96-CR-116 in which the Defendant entered a plea of guilty to breaking into a woman's residence and standing over her and masturbating while she slept[,]" as well as a second instance of sexual assault "of a child who was 11 years old at the time of the incidents[,]"  and which occurred in the months before Defendant's arrest on this offense).

{¶45} The record further indicates that a combined hearing was held on November 8, 2016, where extensive argument and discussion took place regarding 1.) the victim's allegation of rape by another individual; 2) Appellant's desire to use that evidence to demonstrate selective prosecution and the need for a special prosecutor; and 3) the State's insistence that any evidence regarding another rape allegation and medical records should be excluded by the rape shield law.  The hearing transcript also indicates the State did not dispute that the victim reported, both during a forensic interview and also to Detective Jodi Conkel, that she had been raped by another individual.

**{¶46}** Now, on appeal, Appellant contends that the State engaged in selective prosecution because it pursued charges against only him, despite an allegation by the victim that she was raped by another individual in September of 2013. Appellant also argues, under this assignment of error, that the trial court erred in applying the rape shield law to the extent that it excluded the victim's claim of rape by someone other than him, and failed to hold a hearing of the truth or falsity of the victim's allegation that she was raped by someone else. Appellant appears to attempt to bootstrap a rape shield argument to a selective prosecution argument, in essence arguing that the other rape allegation was false and should not have been excluded by the rape shield law, while at the same time arguing that the other rape allegation was true, and that because the State did not pursue charges against that other individual, that he was the subject of selective prosecution. We find a certain inequity in permitting Appellant to argue the other rape allegation was true for purposes of his selective prosecution argument, while arguing that the other rape allegation was false for purposes of his rape shield argument. Appellant cannot argue both theories.

**{¶47}** After reviewing what can be described, at best, as a very confusing transcript of the combined hearing held on Appellant's motion alleging selective prosecution, it appears the State stipulated that the victim

did, in fact, allege another individual also raped her in September of 2013. It also appears from the trial court's entry denying Appellant's motion for dismissal based upon grounds of selective prosecution that that trial court assumed, for purposes of the motion, that the victim did, in fact, allege she was raped by another individual. Further, it was clear from the hearing transcript that the State did not pursue an investigation of that allegation. Based upon those assumptions, the trial court denied Appellant's motion to dismiss.

{¶48} We cannot conclude, based upon the foregoing and in light of the applicable test, that the trial court erred in denying Appellant's motion, as it seems the focus of Appellant's argument below was simply that another individual should have been prosecuted as well, and that because only Appellant was being prosecuted, he was the subject of selective prosecution. As set forth above, "a defendant's burden of establishing discriminatory prosecution is a heavy one, and the mere failure to prosecute other violators of a statute does not establish the defense of selective prosecution." *See State v. Hutchinson, supra;* citing *State v. Freeman, supra,* at 58. Appellant asks this Court to find some invidious motive in relation to the State's desire to introduce other acts evidence against him at trial, related to charges from twenty years prior that referenced another, unrelated sexual assault.

However, we cannot conclude that the existence of such evidence or the State's desire to introduce it demonstrates bad faith, or an invidious motive to prosecute Appellant based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights, as contemplated by the test to determine selective prosecution.  Having failed to demonstrate a prima facie case of selective prosecution, Appellant was not entitled to a further hearing on his motion and we find no error in the trial court's denial of Appellant's motion.

{¶49} We now turn our attention to Appellant's underlying arguments that the trial court committed reversible error by not allowing the jury to know the alleged victim said she was raped by someone other than himself in September of 2013, that the trial court incorrectly applied the rape shield law to exclude the victim's claim of a rape by someone other than Appellant, and that the trial court committed reversible error by not having a hearing on the truth or falsity of the victim's allegation she was raped by someone other than Appellant in September of 2013.  We initially note that Appellant attempts to tie the rape shield determinations made by the trial court to the denial of his motion for dismissal on grounds of selective prosecution. Appellant suggests that the trial court was required to hold a hearing prior to trial to determine the truth or falsity of Appellant's other rape allegation in

order to determine whether Appellant had demonstrated a prima facie case of selective prosecution. We disagree.

{¶50} As set forth above, the trial court assumed, for purposes of Appellant's motion to dismiss, that the victim made an allegation of rape against someone else. We find, insofar as it serves as support for a selective prosecution claim, that establishing simply whether another allegation was made but not investigated or prosecuted, not whether the allegation was ultimately true or not, is the relevant determination that was required by the trial court in consideration of Appellant's selective prosecution argument. As set forth above, we have found no error with respect to the trial court's disposition of that matter in the manner that it did.

{¶51} Now, it seems Appellant argues on appeal that the evidentiary hearing it requested below, which it claimed was required to determine if, in fact, an additional rape allegation was made for purposes of his selective prosecution argument, should have actually been a hearing under the rape shield procedures to determine the truth or falsity of the victim's other rape allegation and thus the applicability of the rape shield protections. Again, this is the sort of bootstrapping we noted above. If this was Appellant's request below, it was not made clearly and there is no indication that the trial court or the State understood this is actually what Appellant was requesting.

{¶52} In fact, at this juncture we feel compelled to note that Appellant has attempted to intertwine these two issues in such a complex fashion that this Court finds the argument to be extremely convoluted.  Raising three different rape shield arguments under an assignment of error claiming overarching error in the denial of a motion for selective prosecution tempts us not to address this argument, which should have been separately assigned and argued, and which we have the discretion to disregard. App.R. 12(A)(1)(b).  Nevertheless, in the interests of justice, we will address it. Thus, we begin with a review of Ohio's rape shield law.

{¶53} Appellant was found guilty by a jury of one count of rape in violation of R.C. 2907.02.  Subsection D of that statute contains Ohio's rape shield law, which states:

> "Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value. * * *"

R.C. 2907.02(E) further provides:

> "Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be

held at or before preliminary hearing and not less than three
days before trial, or for good cause shown during the trial."

We review the trial court's rape shield rulings under R.C. 2907.02(D) for an
abuse of discretion. *State v. Nguyen*, 4th Dist. Athens No. 12CA14, 2013-
Ohio-3170, 2013 WL 3816605, ¶ 44. "A trial court abuses its discretion
when its decision is unreasonable, arbitrary, or unconscionable." *State v.
Knauff*, 4th Dist. Adams No. 13CA976, 2014-Ohio-308, ¶ 19.

{¶54} Appellant now argues that the trial court was required to hold a
hearing to determine the truth or falsity of the other rape allegation made by
the victim.

> "False [rape] accusations, where no sexual activity is involved,
> do not fall within the rape shield statute. Therefore, a defendant
> is permitted under Evid.R. 608(B), in the court's discretion, to
> cross-examine the victim regarding such accusations if 'clearly
> probative of truthfulness or untruthfulness.' However, the
> defendant will be bound by the answers given by the victim."
> *State v. Boggs*, 63 Ohio St.3d 418, 421, 588 N.E.2d 813 (1992).

Further,

> "Where an alleged rape victim admits on cross examination that
> she has made a prior false rape accusation, the trial judge shall
> conduct an in camera hearing to ascertain whether sexual
> activity was involved and, as a result, cross-examination on the
> accusation would be prohibited by R.C. 2907 .02(D), or
> whether the accusation was totally unfounded and therefore
> could be inquired into pursuant to Evid.R. 608(B)." *Id.* at
> paragraph two of the syllabus.

"The requirements of an in camera hearing, as provided by R.C. 2907.02(E), may be waived if not asserted to the trial court prior to trial, or during trial with good cause being shown." *State v. Acre*, 6 Ohio St.3d 140, 451 N.E.2d 802 (1983).

{¶55} Here, the State sought to avoid the issue coming up at trial by filing a pre-trial motion in limine seeking to prohibit Appellant from asking any questions related to another allegation of rape that had been made by the victim, as against Appellant's seventeen-year-old nephew, Jacob Tackett. The trial court held a hearing on the motion in limine involving the applicability of the rape shield law, which was combined with a hearing on Appellant's motion for special prosecutor and motion for dismissal based upon grounds of selective prosecution, primarily based upon Appellant's counsel's assertions that all of the issues were inextricably intertwined. At the hearing, the State stipulated that the victim alleged she had been raped by Jacob Tackett in September of 2013, and that this accusation was made during the forensic interview conducted just prior to the physical exam that was conducted in relation to the reported rape by Appellant, and was made again to Detective Jodi Conkel during the course of the criminal investigation of Appellant.

{¶56} Thereafter, Appellant filed a Notice of Submission of "items in the State's discovery that support a prima facie case of selective prosecution[,]" which included a copy of the victim's "allegation against a similarly situated individual" that was "made in her forensic interview with the Childrens' Protective Center of Ross County and is memorialized in the search warrant affidavit sworn by Detective Jodi Conkle for the search of the trailer where said acts allegedly occurred." Thus, the trial court held a pre-trial hearing on the motion in limine filed by the State on the issue of the applicability of the rape shield law and had before it, before it issued its decision, a sworn affidavit by a detective memorializing the victim's report to her as follows: "[Victim] stated that last September Jacob Tackett who is the nephew of Shannon also had sex with her but he did not hold her down, he just got on top of her and stuck his penis inside of her." The trial court subsequently issued a decision stating that the "Rape Shield Law shall apply in this case and counsel are hereby ordered to comply with said law."

{¶57} Under *Boggs*, a defendant may inquire into the prior accusation at trial only when the prior accusation was "totally unfounded." *Boggs* at paragraph two of the syllabus. "[T]he defendant has the burden to 'demonstrate that the accusations were totally false and unfounded.' " *State v. Netherland*, 132 Ohio App.3d 252, 262, 724 N.E.2d 1182 (1999); quoting

*Boggs* at 423. "[T]he trial court must be satisfied that the prior allegations of sexual misconduct were actually false or fabricated." *Netherland* at 262. We conclude that the trial court's hearing on all of these combined issues, which was held pre-trial where counsel were permitted an opportunity to argue their positions, coupled with the court's review of a sworn affidavit of Jodi Conkel sufficiently complied with the rape shield procedures and afforded the court the information necessary to make a determination as to truth or falsity of the allegation at issue and the applicability of the rape shield law. Based upon the foregoing, we cannot conclude that the trial court abused its discretion in determining that the rape shield law applied. Accordingly, we find no merit to this argument raised under Appellant's second assignment of error.

{¶58} Finally, we similarly find no merit to Appellant's argument that the trial court erred in denying his motion for a special prosecutor. A common pleas court has inherent authority to appoint counsel to assist the grand jury in criminal matters where neither the prosecuting attorney nor his duly appointed assistant can perform these duties. *State ex rel. Williams v. Zaleski*, 12 Ohio St.3d 109, 111, 465 N.E.2d 861 (1984); citing *State ex rel. Thomas v. Henderson*, 123 Ohio St. 474, 478, 175 N.E. 865 (1931); *see also State v. Miller*, 4th Dist. Meigs No. 92CA496, 1993 WL 415306, *5 (Oct.

14, 1993) ("Regardless of the absence of any statutory authority, courts possess inherent power to appoint special prosecutors where regular prosecutors assert conflicts"). " 'A court's inherent authority is a power that is neither created nor assailable by acts of the legislature.' " *Hayslip v. Hanshaw*, 2016-Ohio- 3339, 54 N.E.3d 1272, ¶ 19 (4th Dist.); citing *Welty v. Casper*, 10th Dist. Franklin Nos. 13AP–618 and 13AP–714, 2014-Ohio-2903, ¶ 11; citing *Hale v. State*, 55 Ohio St. 210, 215, 45 N.E. 199 (1896).

{¶59} As set forth above, in *State v. Powell*, we noted in ¶ 21 that " '[t]he decision whether to prosecute a criminal offense is generally left to the discretion of the prosecutor.' " Quoting *State v. Lamar, supra,* at ¶ 43-44; citing *United States v. Armstrong, supra,* at 464. In Ohio, "prosecutorial discretion is not without bounds." *State ex rel. Daugherty v. Heck*, 9th Dist. Medina No. 1610, 1987 WL 19460, *1. However, in *Daugherty* the court held that "the mere allegation by a petitioner that a crime was committed and that the prosecutor abused her discretion in not presenting the case to the grand jury for an indictment is insufficient to require the court to invoke its inherent power." *Id.*

{¶60} In light of the foregoing case law and coupled with the fact that we have rejected Appellant's argument that he was entitled to dismissal on grounds of selective prosecution, we cannot conclude that the trial court

erred in refusing to exercise its inherent authority to appoint a special prosecutor upon Appellant's request. Therefore, we find no merit in Appellant's argument that the trial court erred in denying his motion for a special prosecutor. Further, having found no merit in any of the arguments raised under this assignment of error, it is therefore overruled.

## ASSIGNMENT OF ERROR III

{¶61} In his third assignment of error, Appellant contends his conviction was against the sufficiency and manifest weight of the evidence. Appellant raises multiple issues under this assignment of error as follows: 1) whether the evidence sufficiently supported his conviction for rape based on: the alleged victim's testimony; his DNA on items from the bedroom; the absence of DNA from the alleged victim where she said it would be; no physical evidence of penetration; and medical exams that showed no acute injury specific to the date of the alleged offense; 2) whether not knowing the alleged victim said she was raped in September of 2013 by someone other than Appellant affected the jury's consideration of her credibility; 3) whether not knowing the alleged victim said she was raped in September of 2013 by someone other than Appellant affected the jury's consideration of the evidence; 4) whether Appellant presented a reasonable theory of innocence; 5) whether in reviewing the record for sufficiency, after viewing the

evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt; 6) whether the instant case is one of exceptional circumstances; and 7) whether on review of the entire record, weighing all evidence and all reasonable inferences and resolving conflicts in the evidence, the jury clearly lost its way and created such manifest miscarriage of justice that the conviction must be reversed.  The State responds that the guilt of Appellant was a jury question, and that the State's witnesses and exhibits satisfied the sufficiency of the evidence as well as the manifest weight of the evidence.

## STANDARD OF REVIEW

{¶62} "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146; quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard*, 4th Dist. Meigs No.

13CA9, 2014-Ohio-4974, ¶ 27; citing *State v. Kirkland*, 140 Ohio St.3d 73,

2014-Ohio-1966, 15 N.E.3d 818, ¶ 132.

{¶63} In determining whether a criminal conviction is against the

manifest weight of the evidence, an appellate court must review the entire

record, weigh the evidence and all reasonable inferences, consider the

credibility of witnesses, and determine whether, in resolving conflicts in the

evidence, the trier of fact clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed. *State v.*

*Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*,

131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

{¶64} "Although a court of appeals may determine that a judgment is

sustained by sufficient evidence, that court may nevertheless conclude that

the judgment is against the weight of the evidence." *Thompkins* at 387.  But

the weight and credibility of evidence are to be determined by the trier of

fact. *Kirkland* at ¶ 132.  The trier of fact is free to believe all, part, or none of

the testimony of any witness, and we defer to the trier of fact on evidentiary

weight and credibility issues because it is in the best position to gauge the

witnesses' demeanor, gestures, and voice inflections, and to use these

observations to weigh their credibility. *Dillard* at ¶ 28; citing *State v. West*,

4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

LEGAL ANALYSIS

**{¶65}** As set forth above, the jury acquitted Appellant of four counts of rape but found him guilty of count five, which alleged Appellant had forcibly raped the victim in her bedroom on the night of June 19, 2014. R.C. 2907.02 defines the crime of rape and provides as follows:

"(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: * * *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

Appellant argues that the State failed to prove, beyond a reasonable doubt, all of the elements of the offense.

**{¶66}** Appellant contends on appeal that the only evidence against him consisted of: 1) the victim's testimony (which he argues was compromised because of the court's exclusion of her allegation of a separate rape in September of 2013); 2) the testimonies of a nurse and physician who described examinations consistent with sexual conduct, but not specific as to the date alleged in the indictment (and described as "healed" less than 72 hours after an alleged violent rape); and 3) Appellant's DNA from items taken from the location, but which bore no DNA from the alleged victim. Appellant argues the rape kit bore no evidence of rape and vaginal swabs

showed no Y-Chromosome, which he contends is proof that "there was no sign of male penetration, and no DNA foreign to the alleged victim." He points out that penetration is an element that must be proven beyond a reasonable doubt, and argues that "[i]t was unreasonable to believe a rape was committed solely on the girl's allegation, the medical observations without reference to time, and semen on items taken from her room."

{¶67} Appellant further contends that the jury was kept from hearing the truth, i.e. that the victim had alleged she was raped by another individual also, that without this information the jury's ability to weigh credibility and evidence was affected, and that the jury drew unreasonable inferences from circumstantial evidence. Appellant also argues that he presented a reasonable theory of innocence, i.e. that the presence of his semen on the victim's bed sheet and dress and the absence of the victim's DNA on the dress was explained by his account, which explained he had masturbated in the victim's room when she was not there. Finally, he argues the fact that the jury was originally hung on this charge demonstrates reasonable doubt.

{¶68} The State contends the evidence, even from Appellant's point of view and described as "Defendant's semen on a sheet and dress taken from the bedroom, medical exams 'consistent with' sexual conduct; and the girl's testimony[,]" is "tantamount to a public confession of his guilt." The State

further argues that the victim could not have directed Detective Conkel "to her semen-laden dress and bedsheet in her bedroom had she not been raped by him that night." Finally, the State argues that the guilt of Appellant was a question for the jury, and that the witnesses and exhibits introduced by the State satisfied both the sufficiency and manifest weight of the evidence standards.

{¶69} A review of the record reveals that the State introduced the testimony of the victim at trial, who recounted that Appellant forcibly raped her in her bedroom on the night of June 19, 2014. She testified that she was wearing a cheetah print dress, which Appellant removed from her before raping her, and that when Appellant was finished she used a towel to wipe Appellant's semen off her leg. Detective Jodi Conkel testified that she searched the residence pursuant to a search warrant and took items for testing including the victim's bed sheet, a cheetah print dress found in her room, and a towel. She testified that she wasn't sure if she took the right towel or not, but that she took a towel she found in the bedroom. She further testified that Appellant approached her before she left and told her that his semen would be found on the bed sheets because he had laid in the bed and masturbated. Sexual Assault Nurse Examiner Jamie Myers testified on behalf of the State. She testified regarding the sexual assault kit, or rape kit,

she collected on the victim on June 23, 2014. She testified that the victim reported to her that Appellant had raped her by putting his penis into her vagina, but that there was no injury or bleeding. She testified the victim further reported to her that since the rape she had changed her clothes and had taken a bath or shower. She further testified that upon physical exam of the victim she observed a "dip" or "notch" in the victim's hymen indicative of a "healed cut area" consistent with sexual assault. She testified that this constituted an abnormal finding and that less than five percent of the children she examined resulted in abnormal findings. Based upon her findings, Myers testified she referred the victim to the Child Protection Center for follow-up. She further testified upon cross-examination that the results of the testing performed on the rape kit collected from the victim failed to identify the presence of semen or DNA foreign to the victim. She also agreed with defense counsel on cross-examination that the vaginal swabs taken during the rape kit collection showed no Y-Chromosome.

{¶70} Dr. Jathish Setty also testified. He testified that he met with and physically examined the victim some time in July, after a forensic interview was conducted on the child. He testified that his physical examination of the victim revealed tears to her vagina and hymen, consistent with the history provided by the victim. He also testified that her injury was

consistent with penetration from a blunt object, which according to the history provided by the child was a penis, rather than another object. Thus, he testified that his exam indicated penetration had occurred. He conceded on cross-examination that he could not state from his exam the number of times or when penetration had occurred. He further testified that a rape kit, if performed within seventy-two hours of a rape and if the victim had not showered or "done anything since then[,]" would reveal the presence of semen. However, he further agreed upon re-direct examination that the absence of semen from the rape kit performed on the victim herein was consistent with the history provided by the victim, which described that Appellant pulled his penis out of her and then a white substance came out onto her leg, which she wiped off with a towel.

{¶71} Erica Jimenez, a forensic scientist with BCI, also testified on behalf of the State, stating that forensic testing indicated the presence of Appellant's semen on the bed sheet and the victim's dress, but not the towel. When questioned upon cross-examination as to why the victim's DNA was not found on the dress, she stated she was not surprised that it was not found because the sample of the dress that was tested was from area below the waist, whereas when testing is performed to establish the DNA of the wearer of the clothing it is usually tested from an area of the clothing such as the

armpit area, cuff or waistband.  She also confirmed on cross examination that the victim's DNA was not found on the portion of the bed sheet that was tested, and that the towel was not tested for her DNA.

{¶72} Based upon the foregoing evidence, we conclude that the State proved each of the elements of rape, as charged, beyond a reasonable doubt. Contrary to Appellant's argument, the absence of semen or Y-Chromosome identified in the rape kit analysis did not constitute "proof there was no sign of male penetration."  Dr. Jetty testified that a rape kit performed within seventy two hours of a rape will typically identify the presence of semen if the victim had not showered or "done anything since then."  Jamie Myers testified that the victim reported to her during the sexual assault examination that since the rape she had changed her clothes and had taken a bath or shower.  Further, Dr. Jetty agreed with the State on re-direct examination that the absence of semen from the rape kit performed on the victim herein was consistent with the history provided by the victim, which described that Appellant pulled his penis out of her and then a white substance came out onto her leg, which she wiped off with a towel.  Thus, the rape kit results do not prove there was no sign of male penetration.

{¶73} Further, the jury heard all of the expert and medical testimony regarding the physical findings and DNA testing, and listened to Appellant's

testimony which offered an alternative explanation of the presence of his semen on the victim's bed sheets and dress. It is clear that they rejected his version of events, which decision was within their province as the trier of fact. As explained above, weight and credibility issues are left to the jury, and the trier of fact is free to believe all, part, or none of the testimony of any witness, and we defer to the trier of fact on evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Dillard* at ¶ 28; citing *State v. West, supra,* at ¶ 23.

{¶74} Additionally, the jury heard testimony from the victim herself. This Court has previously acknowledged that " '[i]t is well settled that a rape conviction may rest solely on the victim's testimony, if believed, and that '[t]here is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction.' " *State v. Canterbury*, 4th Dist. Athens No. 13CA34, 2015-Ohio-1926, ¶ 62; quoting *State v. Patterson*, 8th Dist. Cuyahoga No. 100086, 2014–Ohio–1621, ¶ 40; quoting *State v. Lewis*, 70 Ohio App.3d 624, 638, 591 N.E.2d 854 (4th Dist.1990). We reject Appellant's assertion that the exclusion of evidence, which we have determined was properly excluded by the rape shield law, so affected the jury's ability to judge the evidence or the victim's credibility that a manifest

miscarriage of justice has occurred. Moreover, attacks on a victim's credibility, or the tendency to "try" the victim, are exactly the types of issues the rape shield law is designed to prevent. *See State v. Gardner*, 59 Ohio St.2d 14, 17, 391 N.E.2d 337 (1979).[5] Further, and importantly, forensic evidence was consistent with the victim's version of events, which the jury believed, and the rape kit results did not disprove the victim's version of events, contrary to Appellant's assertions.

{¶75} With regard to Appellant's argument that because the jury acquitted on four counts and was initially hung on count five, that there must have been reasonable doubt, we disagree. Instead, we believe the fact that the jury acquitted on four of the five counts demonstrates that this was a discriminating jury that understood the burden the State was required to meet. It demonstrates the jury understood that acquittal was required if reasonable doubt was present. This portion of Appellant's argument is also without merit.

{¶76} In light of the foregoing, we cannot conclude that Appellant's conviction is against the manifest weight of the evidence, that the jury lost its way, or that Appellant's conviction was such a manifest miscarriage of

---

[5] *Gardner* explained as follows: "Several legitimate state interests are advanced by the shield law. First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process." (footnotes omitted).

justice that it must be reversed.  Moreover, "[w]hen an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily also includes a finding that sufficient evidence supports the conviction." *State v. Adkins*, 4th Dist. Lawrence No. 13CA17, 2014-Ohio-3389, ¶ 27.  Having already determined that Appellant's rape conviction is not against the manifest weight of the evidence, we necessarily reject Appellant's additional claim that this conviction is not supported by sufficient evidence.  Therefore, Appellant's third and final assignment of error is overruled.  Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:        Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment and Opinion.
Hoover, P.J.:   Concurs in Judgment Only.

                                              For the Court,

                        BY:      _____
                                     Peter B. Abele, Judge

                        BY:      _____
                                     Matthew W. McFarland, Judge

                        BY:      _____
                                     Marie Hoover, Presiding Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**